24CA2073 Peo in Interest of Jordan 02-13-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA2073
Pueblo County District Court No. 24MH30116
Honorable Timothy O'Shea, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Charles Arthur Thomas Jordan,

Respondent-Appellant.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE SULLIVAN
Freyre and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 13, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    Respondent, Charles Arthur Thomas Jordan, appeals the district court's order authorizing the involuntary administration of olanzapine (Zyprexa) and chlorpromazine (Thorazine) — antipsychotic medications — as well as valproic acid (Depakote) — a mood-stabilizing medication.  We affirm the order.

## I.    Background

¶ 2    Jordan was admitted to the Colorado Mental Health Hospital in Pueblo (CMHHIP) after being found incompetent to proceed to trial on criminal charges.  According to the affidavit of his treating physician, Dr. Hareesh Pillai, Jordan has been diagnosed with an unspecified mood disorder.  His illness is a "substantial disorder . . . that grossly impairs judgment or capacity to recognize reality or to control behavior."

¶ 3    Jordan was prescribed Zyprexa and Depakote on an involuntary and emergency basis after he smeared feces on walls and floors, threw books at security, threatened staff with violence and death, and attempted to punch, kick, and spit at them.  Jordan initially refused the emergency medications, "then ran across the hall and kicked a staff member in the face."  He denied that he suffered from a mental illness and needed medication, and he asked

1

for information about a medication hearing. The People petitioned for a hearing and an order authorizing the involuntary administration of Zyprexa and Depakote, plus Thorazine as needed for episodes of acute agitation.

¶ 4    Both Dr. Pillai and Jordan testified at the hearing. Dr. Pillai testified about each of the four elements required for involuntary administration of medication under *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985). In general, he described Jordan's symptoms, statements, and behaviors, as well as the benefits and potential side effects of treatment with Zyprexa, Thorazine, and Depakote. Jordan testified that he didn't have a mental illness and that he wouldn't take medications without a court order. He complained that the medications caused flushing and headaches, although he said that he receives Tylenol to treat the headaches. He expressed a preference to be treated with marijuana or, alternatively, with an antianxiety drug and an antidepressant.

¶ 5    At the conclusion of the testimony, the district court found Dr. Pillai's opinions to be credible and persuasive and adopted them. It found that the People had established each of the *Medina* elements by clear and convincing evidence, and it issued an order authorizing

CMHHIP staff to administer all of the requested medications for a period of six months. While the court was delivering its findings, Jordan "stormed out" and began "fighting with staff."

¶ 6    On appeal, Jordan challenges the sufficiency of the evidence supporting the court's order.

## II.    Legal Authority and Standard of Review

¶ 7    A district court may authorize the involuntary administration of medication to a patient if the treating facility establishes each of the following *Medina* elements by clear and convincing evidence: (1) the patient is incompetent to participate effectively in the treatment decision; (2) treatment by medication is necessary either to prevent a significant and likely long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient causing serious harm to themselves or others in the institution; (3) a less intrusive treatment alternative isn't available; and (4) the patient's need for treatment with medication is sufficiently compelling to override their bona fide and legitimate interest in refusing

medication.[1]  *Id.; see People in Interest of Strodtman,* 293 P.3d 123, 131 (Colo. App. 2011).  A physician's testimony alone may constitute clear and convincing evidence.  *See People v. Pflugbeil,* 834 P.2d 843, 846-47 (Colo. App. 1992).

¶ 8     When, as here, a patient challenges the sufficiency of the evidence supporting the district court's findings on any of these elements, we review the court's conclusions of law de novo and defer to its findings of fact if supported by evidence in the record. *People v. Marquardt,* 2016 CO 4, ¶ 8.  We view the record as a whole and in the light most favorable to the People, and we defer to the fact finder to resolve any conflicts in the testimony and determine the credibility of witnesses.  *See People in Interest of Ramsey,* 2023 COA 95, ¶ 23; *see also Strodtman,* 293 P.3d at 130.

---

[1] A different test applies to petitions to administer involuntary medication solely to restore competency. *Sell v. United States,* 539 U.S. 166, 180-81 (2003).  But the parties don't dispute that *People v. Medina,* 705 P.2d 961 (Colo. 1985), applies here because the purpose of the medications is to prevent Jordan from causing serious harm to others in the institution.  *See Sell,* 539 U.S. at 181-83.

## III.  Analysis

¶ 9    Jordan challenges the sufficiency of the evidence only for the first and fourth *Medina* elements.  He argues that Dr. Pillai's testimony failed to show (1) that he was incapable of participating in treatment decisions; or (2) a sufficiently compelling need to override his interest in avoiding side effects from the requested medications.  *See Medina*, 705 P.2d at 973-74.  We conclude that the record provides ample support for the court's findings.

### A.    First *Medina* Element

¶ 10    A patient is incompetent to participate effectively in treatment decisions when his "mental illness has so impaired his judgment as to render him 'incapable of participating in decisions affecting his health.'"  *Id.* at 973 (citation omitted).  When a patient's failure to recognize that he has a mental illness interferes with his ability to effectively participate in treatment decisions, the first *Medina* element is "easily" satisfied.  *People in Interest of C.J.R.*, 2016 COA 133, ¶ 32.

¶ 11    The district court found that Jordan "has no or limited insight into his mental illness" and is thus "incapable of making informed treatment decisions."  Dr. Pillai testified that he didn't believe

5

Jordan had any insight into his mental illness and that Jordan was incompetent to effectively participate in decisions affecting his health, including medication decisions. He asserted that Jordan (1) "frequently exhibited disorganized thinking and prominent delusions" such as hearing "CIA mind control," in addition to agitation; (2) denied suffering from any type of psychiatric illness and denied needing medication; (3) thought he was put on emergency medications "for critical resistance exercising"; and (4) had punched himself in the neck "to try and improve circulation and blood flow." Jordan testified that Dr. Pillai "said many lies," but as a whole his testimony substantially corroborated Dr. Pillai's assertions.

¶ 12 Viewing this testimony in the light most favorable to the People, we conclude that the record amply supports the district court's findings as to the first *Medina* element. *See C.J.R.*, ¶ 32; *see also Ramsey*, ¶ 23.

### B. Fourth *Medina* Element

¶ 13 In assessing the fourth *Medina* element — whether the patient's need for treatment is sufficiently compelling to override any legitimate interest in refusing treatment — a court must

6

determine (1) "whether the patient's refusal is bona fide and legitimate" and, if so, (2) "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Medina*, 705 P.2d at 974.

¶ 14    As to the first question, Jordan told the district court that he wished to refuse treatment on religious grounds. He asserted that taking medications was against his beliefs because, among other things, "Religion, anything bible." Dr. Pillai testified that he knew of no bona fide reason for Jordan to refuse treatment and that he considered Jordan's refusal irrational and unreasonable. Giving Jordan the benefit of the doubt, the court found that Jordan's religious preference was a bona fide and legitimate reason for refusing medication.

¶ 15    Turning to the second question, Dr. Pillai testified that Jordan had engaged in the impulsive and assaultive behaviors described above in Part I, in addition to throwing feces at staff. He further testified that Jordan's delusions, disorganized thinking, and his ability to be redirected had improved on the emergency medications

and that his agitation would worsen without the medication. In Dr. Pillai's opinion, the failure to medicate Jordan would make him a danger to others — causing more harm than the risks posed by the medication. Based on this testimony, the district court found that Jordan's prognosis without medication was so unfavorable that his personal preference must yield to the state's legitimate interests in preserving his health and protecting the safety of those in CMHHIP.

¶ 16 Viewing Dr. Pillai's testimony in the light most favorable to the People, we conclude that the record supports the district court's findings as to the fourth *Medina* element. In sum, we perceive clear and convincing evidence of a compelling need for involuntary administration of medications. *See Pflugbeil*, 834 P.2d at 846-47.

¶ 17 Our conclusion is unaffected by Jordan's appellate argument that he seeks to refuse medication due to two side effects: headaches and suicidal thoughts. While actual side effects can be a legitimate reason for refusing treatment, Jordan's alleged side effects are either relatively minor — his headaches are treatable with Tylenol — or not attributable to the medications — as Dr. Pillai testified to regarding Jordan's suicidal thoughts. Moreover, Dr. Pillai testified that Jordan doesn't have any known underlying

8

health conditions that could be worsened by the medications and that CMHHIP monitors for any negative side effects.

¶ 18　　Our conclusion is similarly unaffected by Jordan's belated argument that the state has demonstrated a lack of interest in treating him by failing to treat his self-diagnosed depression. Dr. Pillai testified that Jordan hadn't exhibited depression during this hospitalization and that antidepressant medications weren't appropriate treatments for Jordan's symptoms. *See Ramsey*, ¶ 23. Moreover, Jordan didn't present this argument to the district court. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n.5 (Colo. 1992) ("Arguments never presented to, considered or ruled upon by a trial court may not be raised for the first time on appeal.").

## IV.　Disposition

¶ 19　　We affirm the order.

JUDGE FREYRE and JUDGE SCHOCK concur.