24CA2167 Peo in Interest of Carr 02-20-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2167
Pueblo County District Court No. 24MH30035
Honorable Timothy O'Shea, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Michael Allen Carr,

Respondent-Appellant.

ORDER AFFIRMED

Division III
Opinion by JUDGE TOW
Dunn and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 20, 2025

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Respondent, Michael Allen Carr, appeals the district court's order authorizing the involuntary administration of four antipsychotic medications — olanzapine (Zyprexa), haloperidol (Haldol), clozapine (Clozaril), and paliperidone (Invega) — and two mood-stabilizing medications — divalproex sodium (Depakote) and lithium. We affirm the order.

## I.    Background

¶ 2     Carr was admitted to the Colorado Mental Health Hospital in Pueblo (CMHHIP) after being found incompetent to proceed to trial on criminal charges. This was not his first mental health admission. Carr had been previously admitted to CMHHIP in 2019 and 2020 and to the Colorado Mental Health Hospital in Fort Logan in 2023. Each time, he required involuntary treatment due to his physical aggression and refusal to eat or drink, causing serious weight loss. And each time Carr was released, he discontinued his medications.

¶ 3     In June 2024, the district court entered an order permitting the involuntary administration of Zyprexa, Haldol, Depakote, and an antianxiety medication for six months. In December 2024, the People requested a new involuntary treatment order.

¶ 4    Carr and Dr. Elisabeth Cheney, Carr's treating physician, both testified at the hearing on the December petition.  Dr. Cheney testified about each of the four elements required for involuntary administration of medication under *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985).  She explained Carr's need for the requested medications as follows:

- Carr was diagnosed with "schizoaffective disorder bipolar type," a substantial disorder that grossly impairs judgment or capacity to recognize reality or to control behavior.

- Zyprexa, Haldol, and Depakote were not treating Carr's symptoms successfully — he is "still substantially delusional and thought disordered."

- Carr's symptoms had become increasingly resistant to treatment due to his frequent discontinuation of medication.

- To manage Carr's symptoms and to address his side effects from Haldol (involuntary mouth movements) and Depakote (sedation), Dr. Cheney plans to taper down his

2

current medications and begin treating him with Clozaril, Invega, and lithium, as necessary.

¶ 5    Carr testified that he would not take any of the requested medications without a court order. He complained of the following existing side effects: drooling, jaw movements, sedation, weight gain, erectile dysfunction, and inability to focus. And he alleged that Invega had also caused poor sleep and headaches when he took it in the past. He wished to be treated with Strattera (an Attention Deficit Hyperactivity Disorder (ADHD) treatment) and perhaps a low dose of Seroquel (an antipsychotic) instead.

¶ 6    At the conclusion of the testimony, the district court found Dr. Cheney's opinions to be credible and persuasive and adopted them. It found that each of the *Medina* elements had been established by clear and convincing evidence, and it issued an order authorizing CMHHIP staff to involuntarily administer all of the requested medications for a period of six months.

¶ 7    On appeal, Carr challenges the sufficiency of the evidence supporting the court's order.

3

## II. Legal Authority and Standard of Review

¶ 8        A district court may authorize the involuntary administration of medication to a patient only if the People establish each of the following *Medina* elements by clear and convincing evidence: (1) the patient is incompetent to participate effectively in the treatment decision; (2) treatment by medication is necessary either to prevent a significant and likely long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient causing serious harm to himself or others in the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's need for treatment with medication is sufficiently compelling to override his bona fide and legitimate interest in refusing medication. *Id.*; *see People in Interest of Strodtman*, 293 P.3d 123, 131 (Colo. App. 2011). A physician's testimony alone may constitute clear and convincing evidence. *See People v. Pflugbeil*, 834 P.2d 843, 846-47 (Colo. App. 1992).

¶ 9        When, as here, a patient challenges the sufficiency of the evidence supporting the district court's findings on any of these elements, we review the court's conclusions of law de novo and defer to its findings of fact if supported by evidence in the record.

*People v. Marquardt*, 2016 CO 4, ¶ 8.  We view the record as a whole and in the light most favorable to the People, and we defer to the fact finder to resolve any conflicts in the testimony and determine the credibility of witnesses.  *See People in Interest of Ramsey*, 2023 COA 95, ¶ 23; *see also Strodtman*, 293 P.3d at 130.

### III.    Analysis

¶ 10    Carr challenges the sufficiency of the evidence only for the first and fourth *Medina* elements.  He argues that the People failed to demonstrate (1) that he was incompetent to effectively participate in treatment decisions or (2) a sufficiently compelling need to override his interest in avoiding side effects from the requested medications.  *See Medina*, 705 P.2d at 973-74.  We conclude that Dr. Cheney's testimony provides ample support for the court's ultimate findings on these elements.

### A.    First *Medina* Element

¶ 11    A patient is incompetent to participate effectively in treatment decisions when his "mental illness has so impaired his judgment as to render him 'incapable of participating in decisions affecting his health.'"  *Id.* at 973 (citation omitted).

¶ 12     The district court found that Carr has limited insight into his mental illness because he wrongly attributes his symptoms to ADHD and is thus incapable of making informed treatment decisions. Dr. Cheney testified to that fact, and she also testified that Carr does not believe he has a psychotic illness and will not choose to take antipsychotic or mood-stabilizing medications if they are not court ordered. She opined that ADHD could not cause Carr's symptoms, which include paranoia, delusions, auditory hallucinations, disorganized thinking, irritability, and intermittent threatening and aggressive behavior. Thus, Carr's desired medications — Strattera and even a high dose of Seroquel — would not treat his illness and could worsen it. Carr's testimony corroborated Dr. Cheney's. Although he acknowledged that he has schizophrenia, he described the symptoms of this illness only as "scattered thoughts." And he confirmed that Strattera is the only medication he thinks he needs, demonstrating that he lacks insight into his schizoaffective bipolar type illness.

¶ 13     Accepting Dr. Cheney's testimony as credible, as we must, and viewing the record in the light most favorable to the People, we conclude that the record amply supports the court's finding that

Carr's limited insight into his illness renders him incompetent to participate effectively in his treatment decisions. *See Ramsey*, ¶ 23.

## B. Fourth *Medina* Element

¶ 14　In assessing the fourth *Medina* element — whether the patient's need for treatment is sufficiently compelling to override any legitimate interest in refusing treatment — a court must determine (1) "whether the patient's refusal is bona fide and legitimate" and, if so, (2) "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Medina,* 705 P.2d at 974.

¶ 15　The district court answered both questions, finding that Carr's (1) preference for ineffective medications was *not* a bona fide and legitimate reason to refuse the requested medications and (2) prognosis without medications was so unfavorable that his personal preference must yield. Carr challenges only the court's first finding. We agree that the record does not support the court's first finding, but we nonetheless conclude that sufficient evidence

supports this *Medina* element because the record establishes that Carr's prognosis without treatment is very unfavorable.

¶ 16     As to the first finding, Carr told the district court that he wished to refuse treatment because he did not like numerous side effects caused by the requested medications. There was no evidence that the side effects complained of were falsely alleged, insignificant, improperly attributed to the medications, or effectively managed. To the contrary, Dr. Cheney testified that because Haldol and Depakote cause actual and significant side effects, she planned to taper down those medications and begin treating Carr with medications posing a lower risk of those adverse effects. Bona fide and significant adverse effects can constitute a legitimate reason to refuse medication. *See People in Interest of Uwayezuk*, 2023 COA 69, ¶ 62. The record establishes a bona fide and legitimate reason for Carr's refusal.

¶ 17     However, we discern ample record support for the court's second finding that Carr's prognosis without medication is so unfavorable that his personal preference must yield to the state's legitimate interests in preserving his health and protecting the safety of those in CMHHIP. Dr. Cheney's affidavit and testimony

demonstrated that without treatment, Carr's mental illness presents a significant risk to his health. He has refused food and water, believing it to be poisoned. Dr. Cheney also testified that without medication, Carr "becomes quite out of control, agitated, and violent due to his psychosis and disorganized thinking, delusions, and auditory hallucinations." And even on medication, he recently threw objects at staff members.

¶ 18    Viewing this record in the light most favorable to the People, we perceive clear and convincing evidence of a compelling need for the involuntary administration of medications. *See Ramsey*, ¶ 23; *Pflugbeil*, 834 P.2d at 846-47. We conclude that the record amply supports the district court's findings regarding the fourth *Medina* element.

## IV.   Disposition

¶ 19    The order is affirmed.

JUDGE DUNN and JUDGE MEIRINK concur.