25CA0064 Peo in Interest of Sandoval 04-10-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0064
Pueblo County District Court No. 25MH30004
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Miguel Augustine Sandoval,

Respondent-Appellant.

---

ORDER AFFIRMED

Division VI
Opinion by JUDGE SCHUTZ
Welling and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 10, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Respondent, Miguel Augustine Sandoval, appeals the district court's order authorizing the involuntary administration of two antipsychotic medications — olanzapine (Zyprexa) and haloperidol (Haldol) — as well as valproic acid (Depakote), a mood-stabilizing medication.  We affirm the order.

## I.     Background

¶ 2     After being found incompetent to proceed to trial on criminal charges, Sandoval was admitted to the Colorado Mental Health Hospital in Pueblo (CMHHIP) — roughly his twentieth hospitalization since adolescence.  According to the affidavit of his treating physician, Dr. Hareesh Pillai, Sandoval has been diagnosed with schizoaffective disorder.  His symptoms include auditory and visual hallucinations, grandiose delusions, disorganized and illogical thoughts, agitation, and paranoia.

¶ 3     Sandoval was prescribed Zyprexa and Depakote on an involuntary and emergency basis after he invaded his peers' personal space; told his social worker, "Bitch, I'll knock the fuck out of you"; threw a cup at staff; yelled repeatedly; and verbally threatened to harm staff.  He refused to take the medications orally and received intramuscular injections.  He continued to display

1

symptoms of his illness, and he once again refused all medications after the ten-day emergency administration ended. The People petitioned for a hearing and an order authorizing a six-month involuntary course of Zyprexa and Depakote, plus Haldol as needed for episodes of acute agitation.

¶ 4 Both Dr. Pillai and Sandoval testified at the hearing. Dr. Pillai testified about each of the four elements required for involuntary administration of medication under *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985). He described Sandoval's symptoms, statements, and behaviors; the benefits of treatment with antipsychotics and mood stabilizers; and the potential side effects of treatment with Zyprexa, Haldol, and Depakote. Sandoval testified that he wanted to take the antipsychotic medication Geodon instead of Zyprexa because Geodon had effectively managed his symptoms for many years without significant adverse side effects. He explained that Zyprexa had been causing muscle tightness or "locking up" that once led to him falling to his knees (which he characterized as a seizure), and his medications had also caused a treatable rash. Despite his preference for Geodon, Sandoval testified that he would take Zyprexa, but only orally.

2

¶ 5     At the conclusion of the testimony, the district court found Dr. Pillai's testimony to be credible and persuasive and adopted his opinions. The court found that Sandoval's testimony was not credible because his answers were hard to follow and inconsistent. Ultimately, the court found that each of the *Medina* elements had been established by clear and convincing evidence, and it issued an order authorizing CMHHIP staff to involuntarily administer all of the requested medications for a period of six months.

¶ 6     On appeal, Sandoval challenges the sufficiency of the evidence supporting the court's order.

## II.     Legal Authority and Standard of Review

¶ 7     A district court may authorize the involuntary administration of medication to a patient only if the People establish each of the following *Medina* elements by clear and convincing evidence: (1) the patient is incompetent to participate effectively in their treatment decisions; (2) treatment by medication is necessary either to prevent a significant and likely long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient causing serious harm to themself or others in the facility; (3) a less intrusive treatment alternative isn't available; and (4) the patient's need for

3

treatment with medication is sufficiently compelling to override their bona fide and legitimate interest in refusing medication. *Id.*; *see People in Interest of Strodtman*, 293 P.3d 123, 131 (Colo. App. 2011). A physician's testimony alone may constitute clear and convincing evidence. *See People v. Pflugbeil*, 834 P.2d 843, 846-47 (Colo. App. 1992).

¶ 8 When, as here, a patient challenges the sufficiency of the evidence supporting the district court's findings on any of these elements, we review the court's conclusions of law de novo and defer to its factual findings if they are supported by evidence in the record. *People v. Marquardt*, 2016 CO 4, ¶ 8. We view the record as a whole and in the light most favorable to the People, and we defer to the fact finder to resolve any conflicts in the testimony and to determine the credibility of witnesses. *See People in Interest of Ramsey*, 2023 COA 95, ¶ 23; *see also Strodtman*, 293 P.3d at 130.

### III. Analysis

¶ 9 Sandoval challenges the sufficiency of the evidence only for the third and fourth *Medina* elements. We address the evidence supporting each of these elements in turn.

## A.    The Third *Medina* Element

¶ 10    The third *Medina* element requires a court to determine that no less intrusive alternative to the proposed medication is available. *Medina,* 705 P.2d at 973.  This element "encompasses not only the gravity of any harmful effects from the proposed treatment but also the existence, feasibility, and efficacy of alternative methods of treating the patient's condition or of alleviating the danger created by that condition."  *Id.* at 974.  A less intrusive alternative is "an available treatment that has less harmful side effects and is at least as effective at alleviating a patient's condition as the proposed treatment."  *Strodtman,* 293 P.3d at 133.

¶ 11    Sandoval argues that Geodon is a less intrusive treatment alternative based on his own testimony that he had been successfully treated with Geodon in the past.  However, the district court found that Sandoval's testimony about the efficacy and side effects of Geodon was not credible, and we defer to the court's credibility determinations.  *Ramsey,* ¶ 23.

¶ 12    The district court found that Geodon was not a less intrusive alternative because Sandoval's prior dose was inherently risky and there was no credible testimony that the high dose effectively

5

treated Sandoval's symptoms. Dr. Pillai's testimony — which the court found credible — supports this finding. He testified that Sandoval's prior stabilizing dose of Geodon was unsafe at nearly twice the recommended maximum dose and that a moderate dose of Zyprexa was a safer treatment. Dr. Pillai also testified that in his opinion, Geodon was not effective in treating Sandoval. Moreover, he could not confirm Sandoval's testimony that Geodon caused minimal side effects.[1]

¶ 13    Viewing the evidence as a whole and in the light most favorable to the People, we conclude that the record supports the court's finding that no less intrusive treatment alternative is available to treat Sandoval's illness. *See Strodtman*, 293 P.3d at 133; *Medina*, 705 P.2d at 974.

---

[1] Sandoval argues, for the first time on appeal, that Dr. Pillai insufficiently explained (1) why he didn't treat Sandoval with a lower dose of Geodon or (2) how a moderate dose of Zyprexa would achieve the same effect as high levels of Geodon. Because the court did not hear credible testimony that Geodon was "as effective at alleviating [Sandoval's] condition as the proposed treatment," this specific testimony was unnecessary. *People in Interest of Strodtman*, 293 P.3d 123, 133 (Colo. App. 2011).

### B. The Fourth *Medina* Element

¶ 14    In assessing the fourth *Medina* element — whether the patient's need for treatment is sufficiently compelling to override any legitimate interest in refusing treatment — a court must determine (1) "whether the patient's refusal is bona fide and legitimate" and, if so; (2) "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Medina*, 705 P.2d at 974.

¶ 15    The district court first found that Sandoval's expressed willingness to take and preference for Geodon was not credible, and therefore he did not have a bona fide and legitimate reason to refuse the requested medications. Sandoval challenges this finding. We conclude that Sandoval expressed a bona fide and legitimate reason to refuse medications.

¶ 16    Sandoval told the district court that he wished to refuse Zyprexa because it caused muscle stiffness or locking — a side effect that Dr. Pillai acknowledged was associated with Zyprexa. Indeed, Dr. Pillai said that he would monitor Sandoval's muscle

7

stiffness and try reducing his Zyprexa dosage once Sandoval "achieved a relative baseline." Bona fide and significant adverse effects can constitute a legitimate reason to refuse medication. *See People in Interest of Uwayezuk*, 2023 COA 69, ¶ 62.

¶ 17    However, the court also found that Sandoval's need for treatment was compelling, that involuntary treatment was necessary to prevent harm to others in the facility, and thus, the state's legitimate interests in treating him override any bona fide and legitimate interest in refusing treatment. The record supports these findings. Dr. Pillai's affidavit and testimony show that when unmedicated, Sandoval refused to eat meals because he believed they were poisoned, was "extremely aggressive and agitated," and verbally and physically threatened staff. Thus, in an unmedicated or inadequately medicated state, the state's legitimate interests in treating Sandoval to prevent him from harming himself or others outweighed his legitimate interest in refusing treatment. Accordingly, we conclude that sufficient evidence supports the district court's ultimate finding as to this Medina element.

## IV.    Disposition

¶ 18    The order is affirmed.

JUDGE WELLING and JUDGE KUHN concur.