The **PEOPLE** of the State of Colorado, Plaintiff–Appellant,

v.

Rebel Lee **PFLUGBEIL,** Defendant–Appellee.

No. 91CA0683.

Colorado Court of Appeals, Div. I.

June 4, 1992.

H. Lawrence Hoyt, Boulder County Atty., Leslie W. Lacy, Asst. County Atty., Boulder, for plaintiff-appellant.

Ronald D. Jung, Boulder, for defendant-appellee.

Opinion by Judge ROTHENBERG.

In this proceeding concerning the certification of Rebel Lee Pflugbeil for involuntary treatment of a mental disorder, the People appeal the order of the trial court denying a motion for confiscation of Pflugbeil's weapons. Pflugbeil cross-appeals the order of the trial court granting an extension of his certification for short-term treatment, and the trial court's order denying his motion for amendment of judgment. We affirm in part, reverse in part, and remand with directions.

In December 1990, Pflugbeil was certified for short-term evaluation and treatment at Fort Logan Hospital by Dr. David Graybill. During a previous hospitalization, Pflugbeil had been diagnosed as suffering from "bipolar disorder with psychotic features" that center around the Civil War and his perceived need to defend the Confederacy. According to Dr. Graybill, one of the features of Pflugbeil's illness is that he becomes fearful or paranoid.

Dr. Graybill requested a hearing for court-ordered medication and Pflugbeil requested a review of the short-term certification. After the hearing, the trial court upheld the certification for short-term care and treatment and granted Dr. Graybill's request for involuntary medications.

By the end of December, Pflugbeil had improved and was transferred to a residential treatment facility. In January, he was discharged to out-patient status.

In February 1991, Pflugbeil told Dr. Graybill that he kept two loaded handguns in his car "to protect himself" and kept three guns locked in storage. Based on Pflugbeil's medical history and condition, Dr. Graybill was concerned that Pflugbeil's paranoia could lead him to feel mistakenly threatened and to shoot someone in the belief that he was defending himself. Thus, Dr. Graybill asked the district court to order Pflugbeil to surrender his weapons. The People then filed a motion requesting that the trial court order confiscation of the weapons.

The trial court denied the People's motion, finding that it lacked statutory authority to enter an order confiscating the weapons. The court suggested that the appropriate solution would be to place Pflugbeil in a more restrictive setting.

In March, Dr. Graybill filed a petition for extension of short-term certification and also requested that the trial court extend the order for involuntary medications. Pflugbeil filed a request for a hearing on the extension of short-term certification.

At the hearing, the People again requested that the court order a confiscation of Pflugbeil's guns or, in the alternative, that it place restrictions on Pflugbeil's access to his guns. The trial court upheld the certification for short-term treatment and granted Dr. Graybill's request for involuntary medications. In so doing, it found, *inter alia*, that Pflugbeil was a danger to others and in need of short-term care and treatment, and that he was incompetent to participate effectively in treatment decisions.

The court also denied the People's request for confiscation of the weapons stating:

> [T]he court has no more right to take away the weapons of Mr. Pflugbeil than it has to take away the weapons of anybody else.... The legislature hasn't authorized [such a right]. And there's simply nothing in the law that would autho-

rize me to take Mr. Pflugbeil's weapons away under these circumstances.

## I.

### PFLUGBEIL'S CROSS–APPEAL

#### A.

Pflugbeil first contends that the court's order finding that he is a danger to others violates his right to due process. We disagree.

Pflugbeil argues that Dr. Graybill's testimony is inherently biased in favor of commitment and that, therefore, the court's reliance on that testimony violates Pflugbeil's right to due process. However, our supreme court rejected a similar argument in *Perreira v. State,* 768 P.2d 1198 (Colo. 1989).

Pflugbeil also argues that the court's finding denied him his right to due process because the only evidence that he is a danger to others relates to his propensity for dangerous actions in the future, rather than to his present conduct. Again, we disagree.

■ In our view, there is no denial of due process if the state proves by clear and convincing evidence that there is a reasonable basis to believe that an individual's mental illness results in a present danger to himself or others or has rendered him gravely disabled. *See People in Interest of King,* 795 P.2d 273 (Colo.App.1990); *People v. Stevens,* 761 P.2d 768 (Colo.1988).

In *People in Interest of King, supra,* this court addressed the same contention that Pflugbeil now makes. King contended that the only evidence supporting a finding of dangerousness concerned his future, rather than his present, potential to cause harm and that, thus, it failed to meet the statutory requirement for involuntary certification. This court rejected the argument and concluded that the trial court was justified in ordering King's continued involuntary treatment based on the totality of the evidence including a psychologist's professional opinion that King was potentially dangerous. *See also People v. Stevens, supra* (there was a reasonable basis to

believe Stevens' mental illness resulted in a present danger to herself or others, where two medical experts testified that Stevens was "potentially dangerous" but not "imminently dangerous").

Here, based upon specific instances of Pflugbeil's past conduct plus the continuing existence of the mental illness causing that past conduct, Dr. Graybill testified that Pflugbeil has a propensity for violence to others. The trial court's finding based on this testimony does not violate Pflugbeil's right to due process. *See People in Interest of King, supra; People v. Stevens, supra.*

#### B.

■ Pflugbeil next contends that the evidence was insufficient to support the trial court's finding that he presented a danger to others. Again, we disagree.

At the hearing, Dr. Graybill testified that: 1) Pflugbeil suffers from a bipolar disorder with associated psychotic delusions centering around the Civil War; 2) one feature of Pflugbeil's illness is that he becomes fearful and paranoid; 3) although Pflugbeil's paranoia is under better control when he is on medication, he experiences paranoia even with medication; 4) in June 1989, Pflugbeil was placed on emergency medication because he was very paranoid, menacing, and was threatening to other patients; (5) in June of 1989, he had smashed a wall clock in the hospital and also threatened to kill the safety officers at the hospital; 6) in December 1989, Pflugbeil was involuntarily hospitalized partly because of his brother's report that Pflugbeil made suicidal statements and had moved a loaded gun to his bedside; 7) during his hospitalization in December 1989, Pflugbeil was physically threatening and intimidating to hospital staff and had lunged at Dr. Graybill; and 8) several years earlier, Pflugbeil had almost shot a friend of his father's who came to check on the property Pflugbeil was renting.

This testimony constituted clear and convincing evidence that Pflugbeil presented a danger to others. Further, it was suffi-

cient to support the trial court's order for short-term treatment. *See People in Interest of King, supra.*

In reaching this conclusion, we reject Pflugbeil's contention that Dr. Graybill's opinion testimony alone was insufficient to meet the People's burden. *See People v. Lane,* 196 Colo. 42, 581 P.2d 719 (1978) (psychiatrist's opinion testimony was sufficient in itself to constitute clear and convincing evidence of respondent's dangerousness).

### C.

■ We also reject Pflugbeil's contention that Dr. Graybill's opinion testimony was inadmissible because it was based in part on statements made to him by other health professionals.

At the hearing, Dr. Graybill testified that the sources he relied on in making his diagnosis and prognosis are those usually relied upon by psychiatrists in diagnosing a patient's condition and forming a prognosis. Accordingly, this testimony was properly admitted. *See* CRE 703.

### D.

Finally, Pflugbeil contends that the evidence was insufficient to support the trial court's order of involuntary medication. We disagree.

Section 27–10–111(4.5), C.R.S. (1989 Repl. Vol. 11B) provides that, if a mentally ill patient refuses to accept medication, the district court which originally ordered the patient's certification has jurisdiction to accept a petition from a treating physician and to enter an order requiring that the patient accept such treatment. If he refuses, the court may order the medication forcibly administered.

■ The physician seeking to administer the treatment has the burden of proof to establish justification for such treatment by clear and convincing evidence of four propositions: 1) the patient is incompetent to participate effectively in the treatment decision; 2) treatment by medication is necessary to prevent a significant and likely long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient causing serious harm to himself, herself, or others in the institution; 3) a less intrusive treatment alternative is not available; and 4) the patient's need for treatment by medication is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment. *See People v. Medina,* 705 P.2d 961 (Colo.1985).

Pflugbeil challenges only the trial court's finding that he was incompetent to participate in treatment decisions.

At the hearing, Dr. Graybill testified that: 1) Pflugbeil does not believe that he is mentally ill or that there is any reason for him to be in treatment or to take medication; 2) when Pflugbeil was not on medication he stopped eating and drinking and allowed his health to deteriorate to dangerous levels; 3) Pflugbeil told Dr. Graybill before the hearing that whether or not he continued with the treatments would depend on the outcome of the hearing; 4) Pflugbeil told Dr. Graybill that he would not take medication without a court order; and 5) in the past, Pflugbeil had stopped taking medication shortly after the court order requiring him to do so expired.

Based on this testimony, we conclude that the evidence was sufficient to support the trial court's order.

### II.

### THE PEOPLE'S APPEAL

The People contend that the trial court erred in denying its motion for confiscation of weapons. We agree.

■ Under Colo. Const. art. II, § 13, an individual is guaranteed the right to "keep and bear arms in defense of his home, person, and property." The right to bear arms is not absolute, however, and may be restricted by the state's valid exercise of its police power. *See People v. Garcia,* 197 Colo. 550, 595 P.2d 228 (1979).

A state may validly restrict or regulate the right to possess arms if the purpose of such possession is not a constitutionally protected one. *See People v. Ford,* 193

Colo. 459, 568 P.2d 26 (1977). *See also* § 18–12–108, C.R.S. (1986 Repl.Vol. 8B) (prohibiting the possession of weapons by previous offenders); § 18–12–106(1)(d), C.R.S. (1986 Repl.Vol. 8B) (prohibiting the possession of a firearm by one who is under the influence of intoxicating liquor or a controlled substance).

The People concede that no statute expressly allows a court to order the confiscation of weapons from an individual certified for short-term treatment. Nevertheless, the People contend that several provisions of the Act for the Care and Treatment of the Mentally Ill, §§ 27–10–101, et seq., C.R.S. (1989 Repl.Vol. 11B) (the Care and Treatment Act), give the trial court *implicit* authority to order such confiscation. The provisions relied upon include § 27–10–107(6), § 27–10–117(1), and § 27–10–125, C.R.S. (1989 Repl.Vol. 11B).

We conclude that § 27–10–125 does confer such authority. It provides:

(1)(a) When any interested person wishes to obtain a determination as to the ... deprivation of a legal right for any person who is mentally ill and a danger to himself or others, is gravely disabled, or is insane ... and who is not then subject to proceedings under this article ... such interested person may petition the court for a specific finding as to such ... deprivation of a legal right....

(2)(a) The court may ... deprive a person of a legal right only upon finding both of the following:

(I) That the respondent is mentally ill and a danger to himself or others, gravely disabled, or insane ...

(II) That the requested ... deprivation is both necessary and desirable.

Section 27–10–125(3), C.R.S. (1989 Repl. Vol. 11B) further provides that no legal right may be deprived for longer than six months without a review hearing by the court at the end of six months. At that time, the deprivation may be continued upon the court's reaffirmation of the findings specified in § 27–10–105(2), C.R.S. (1989 Repl.Vol. 11B).

There is very little authority interpreting § 27–10–125, and the issue before us raises a question of first impression in Colorado, namely: Whether § 27–10–125 allows an interested person to petition the court for the deprivation of a *certified patient's* legal rights. We hold that it does.

In *Perreira v. State, supra,* our supreme court addressed the tort liability of a state mental health center and its staff psychiatrist for the shooting death of a police officer by a mental patient recently released from an involuntary commitment. In reaching the conclusion that the staff psychiatrist could be held liable, the court interpreted § 27–10–125. It stated:

[The treating physician] ... had the authority [under § 27–10–125] to petition the court for an order depriving [respondent] of certain legal rights upon his release, or imposing on him certain legal disabilities, consistent with [respondent's] needs and the interest of public safety.... *This authority certainly was broad enough to encompass a petition for an order prohibiting [respondent] from obtaining the return of his gun or possessing any other weapon upon his release, and for an order imposing such other restrictions as might significantly reduce any risk of violence by [respondent].* (emphasis added)

However, Pflugbeil contends that *Perreira* does not apply since it involved the legal rights of a voluntary, non-certified patient, and Pflugbeil was an *involuntary,* certified patient. Thus, according to Pflugbeil, the provisions of § 27–10–125 do not apply to him and do not authorize the state to confiscate his weapons. We disagree.

In interpreting a statute, a reviewing court must presume that the General Assembly intended a just and reasonable result and must seek to avoid an interpretation that leads to an absurd result. *See Ingram v. Cooper,* 698 P.2d 1314 (Colo. 1985).

Here, the interpretation urged by Pflugbeil would lead to unjust and absurd results because it would allow a court to confiscate the weapons of a voluntary, non-certified mental patient who has been released. However, it would prohibit a court from confiscating the weapons of an invol-

untarily committed mental patient, such as Pflugbeil, who has been released but has been determined to be a danger to others. We cannot believe that the General Assembly, in enacting the statutory scheme surrounding mentally ill patients, intended to confer an unrestricted right to possess weapons upon persons with mental diseases so serious that they have been involuntarily committed and have had proven histories of violence.

We therefore hold that, under § 27–10–125, an interested person may petition the court for an order to deprive an involuntarily committed patient of his legal right to weapons.

In view of this holding, we need not consider the other arguments made by the People.

The order denying the People's motion to confiscate weapons is reversed, and the cause is remanded to the trial court for a hearing to determine whether the elements set forth in § 27–10–105(2) have been met. The orders granting the People's motion for extension of certification for short term treatment and denying defendant's motion for amendment of judgment are affirmed.

PIERCE and HUME, JJ., concur.