24CA1178 Peo in Interest of Kreidler 09-12-2024

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 24CA1178
Pueblo County District Court No. 23MH371
Honorable Timothy O'Shea, Judge

_____

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Richard Dana Kreidler,

Respondent-Appellant.

_____

ORDER AFFIRMED

Division II
Opinion by JUDGE SCHOCK
Fox and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 12, 2024

_____

Cynthia L. Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1　Respondent, Richard Dana Kreidler, appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (CMHHIP), or any other designated facility, to involuntarily administer medication to him.  We affirm.

## I.　Background

¶ 2　Kreidler was committed to CMHHIP for competency restoration in a criminal case.  He was diagnosed with schizoaffective disorder bipolar type and presented with symptoms that included delusions, significant mood shifts, and response to internal stimuli.

¶ 3　Kreidler's criminal charges were dismissed after he was found permanently incompetent to proceed due to chronic psychosis.  But he has remained hospitalized at CMHHIP on a civil commitment, having been assessed as gravely disabled and a danger to others.

¶ 4　Kreidler has been subject to multiple involuntary treatment orders based on his refusal to take the antipsychotic and mood stabilizing medication prescribed for him.  The People's most recent petition for review of Kreidler's refusal of treatment and involuntary administration of medication is the subject of this appeal.

¶ 5　The district court held an evidentiary hearing on the petition.  Dr. Charles Dygert, a CMHHIP staff psychiatrist and Kreidler's

1

attending psychiatrist, testified, as did Kreidler. At the end of the hearing, the district court found that Dr. Dygert had testified "credibly and persuasively," and it concluded that the People had proved all four elements set forth in *People v. Medina,* 705 P.2d 961 (Colo. 1985). The court issued an order authorizing CMHHIP staff to administer to Kreidler the requested medications — Depakote, Seroquel, Caplyta/Lumateperone, and Zyprexa/Olanzapine.

## II. Analysis

¶ 6 Kreidler contends that the evidence presented at the hearing was insufficient to prove the fourth *Medina* factor: that his need for treatment is sufficiently compelling to override his bona fide and legitimate interest in refusing treatment. We are not persuaded.

### A. Applicable Law and Standard of Review

¶ 7 A district court may order the involuntary administration of medication to a patient only if the People prove, by clear and convincing evidence, each of the four factors outlined in *Medina*:

(1) the patient is incompetent to effectively participate in the treatment decision;

(2) treatment by antipsychotic medication is necessary to prevent a significant and likely long-term deterioration in

2

the patient's mental condition or to prevent the likelihood

of the patient's causing serious harm to himself or others

in the institution;

(3)     a less intrusive treatment alternative is not available; and

(4)     the patient's need for treatment by antipsychotic

medication is sufficiently compelling to override any bona

fide and legitimate interest of the patient in refusing

treatment.

*Id.* at 973.[1]  A psychiatrist's testimony may suffice to meet this

burden.  *People v. Pflugbeil*, 834 P.2d 843, 847 (Colo. App. 1992).

¶ 8      When a patient challenges the sufficiency of the evidence

supporting an involuntary medication order, we review the district

court's legal conclusions de novo but defer to its findings of fact if

they have record support.  *People v. Marquardt*, 2016 CO 4, ¶ 8.  We

view the evidence as a whole and in the light most favorable to the

---

[1] When the state seeks to administer antipsychotic drugs involuntarily to a criminal defendant to render them competent to stand trial, a reviewing court applies the test in *Sell v. United States*, 539 U.S. 166, 178 (2003).  But state law tests apply when the state seeks to administer antipsychotic drugs involuntarily for a *different* purpose, including a purpose "related to the individual's dangerousness, or . . . the individual's own interests where refusal to take drugs puts his health gravely at risk."  *Id.* at 181-82.

People to determine if it is sufficient to support the district court's order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. If it is, we may not substitute our judgment for that of the district court. *See People in Interest of A.J.L.*, 243 P.3d 244, 255 (Colo. 2010).

## B. Fourth *Medina* Factor

¶ 9　　The fourth *Medina* factor requires a court to first determine "whether the patient's refusal is bona fide and legitimate." *Medina*, 705 P.2d at 974. If so, the court must determine "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 10　　The district court found, with record support, that Kreidler had failed to identify any legitimate reason for refusing the requested medications. Dr. Dygert testified that he knew of no bona fide or legitimate reason for Kreidler's refusal to take the medications and that such refusal was irrational and unreasonable under the circumstances. He explained that the medications did not have any negative effect on Kreidler's overall health. And the

4

only negative side effect Kreidler identified was that the medications "make [him] less effective, I think — getting things accomplished."

¶ 11 Kreidler contends on appeal that he has a legitimate interest in maintaining bodily autonomy and avoiding severe side effects. He points to Dr. Dygert's testimony about the potential side effects of the medications, as well as Kreidler's history of "significant Parkinsonian-type symptoms" caused by previous medications.

¶ 12 But Dr. Dygert explained that his focus had been on "trying to find a medication that's effective, but that has a minimal amount of those [Parkinsonian] side effects." He testified that Kreidler was not experiencing any of those side effects under his current medication regimen. Indeed, the reason Dr. Dygert wanted to start Kreidler on Caplyta is that it is "one of the least likely" medications to cause Parkinsonian side effects while also "likely to be somewhat more effective for [Kreidler's] symptoms." The district court specifically acknowledged this point, noting that "Caplyta is least likely to cause side effects for this patient." The only other side effect Dr. Dygert testified that Kreidler had experienced was "some sedation," but the Caplyta was expected to help with that issue as well. This

record amply supports the district court's finding that Kreidler did not have a bona fide and legitimate interest in refusing treatment.

¶ 13    Moreover, even if Kreidler did have a bona fide and legitimate interest in refusing treatment, the record supports the district court's finding that Kreidler's need for medication is sufficiently compelling to override that interest.  Dr. Dygert testified that the failure to medicate Kreidler would be more harmful than the risk posed by the medications.  In particular, he opined that without the medications, Kreidler "would be greatly disabled, not able to manage his . . . basic needs, as well as a potential danger to others."  The district court credited Dr. Dygert's testimony, finding it both credible and persuasive, and we must defer to those findings.  *See People in Interest of Ramsey*, 2023 COA 95, ¶ 59.

### III.    Disposition

¶ 14    The order is affirmed.

JUDGE FOX and JUDGE JOHNSON concur.