25CA0370 Peo in Interest of EME 05-22-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0370
Pueblo County District Court No. 24MH30074
Honorable Scott B. Epstein, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of E.M.E.,

Respondent-Appellant.

---

ORDER AFFIRMED

Division VII
Opinion by JUDGE LUM
Lipinsky and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 22, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado for Respondent-Appellant

¶ 1   Respondent, E.M.E., appeals the district court order authorizing the involuntary administration of two antipsychotic medications — olanzapine (Zyprexa) and haloperidol (Haldol) — as well as valproic acid (Depakote), a mood-stabilizing medication. We affirm the order.

I.   Background

¶ 2   E.M.E. was admitted to the Colorado Mental Health Hospital in Pueblo (CMHHIP) after being found incompetent to proceed to trial on criminal charges. According to the affidavits of two treating physicians and the testimony of Dr. Paul Mattox, his current treating physician, E.M.E.'s condition significantly deteriorated when he refused psychiatric medication in jail. As a result, six officers had to transport him to CMHHIP in a "cocoon suit" due to his extremely aggressive conduct. At CMHHIP, he required seclusion and restraint because, among other threatening behaviors, he attempted to bite, strike, pinch, and kick staff. He also hit his head against the walls, held his breath, and elbowed a door.

¶ 3   In August 2024, the district court entered an order permitting the involuntary administration of Zyprexa, Haldol, Depakote, and

1

Thorazine (an antipsychotic) for six months. The order was updated to include a fifth medication — an additional antipsychotic — when E.M.E. continued to exhibit symptoms requiring severe assault precautions. E.M.E. appealed the updated order, and a division of this court affirmed. *People in Interest of E.M.E.*, (Colo. App. No. 24CA1914, Dec. 26, 2024) (not published pursuant to C.AR. 35(e)).

¶ 4 In February 2025, the People petitioned for a six-month order permitting the involuntary administration of Zyprexa, Haldol, and Depakote. They argued that, although E.M.E. had significantly improved during the first six months of involuntary treatment, he continued to believe that he did not have a mental illness and did not benefit from medication. After conducting an evidentiary hearing at which E.M.E. and Dr. Mattox testified, the court issued an order authorizing CMHHIP staff to involuntarily administer the requested medications for six months.

¶ 5 On appeal, E.M.E. challenges the sufficiency of the evidence supporting the court's order.

## II. Legal Authority and Standard of Review

¶ 6 A district court may authorize the involuntary administration of medication to a patient only if the People establish each of the

following elements by clear and convincing evidence: (1) the patient is incompetent to participate effectively in the treatment decision; (2) treatment by medication is necessary to prevent a significant and likely long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient causing serious harm to themself or others in the institution; (3) a less intrusive treatment alternative isn't available; and (4) the patient's need for treatment with medication is sufficiently compelling to override their bona fide and legitimate interest in refusing medication. *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985); *see People in Interest of Strodtman*, 293 P.3d 123, 131 (Colo. App. 2011).

¶ 7 When a patient challenges the sufficiency of the evidence supporting the district court's findings on any of these elements, we review the record as a whole and, viewing it in the light most favorable to the People, determine whether the evidence is sufficient to support the court's decision. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23. We review the court's conclusions of law de novo and defer to its findings of fact if supported by evidence in the record. *People v. Marquardt*, 2016 CO 4, ¶ 8. We also defer to the district court's resolution of evidentiary conflicts and its

determinations of witness credibility, the weight of the evidence, and the inferences to be drawn from it. *See People in Interest of R.C.,* 2019 COA 99M, ¶ 7. A physician's testimony alone may constitute clear and convincing evidence. *See People v. Pflugbeil,* 834 P.2d 843, 846-47 (Colo. App. 1992).

### III. The Fourth *Medina* Element

¶ 8 E.M.E. challenges the sufficiency of the evidence only for the fourth *Medina* element. He argues that the court erred by finding that he did not have a legitimate reason to refuse medication. We conclude that the record provides ample support for the court's ultimate finding on this element.

¶ 9 In assessing whether the patient's need for treatment is sufficiently compelling to override any legitimate interest in refusing treatment, a court must determine (1) "whether the patient's refusal is bona fide and legitimate" and, if so, (2) "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Medina,* 705 P.2d at 974.

## A. Testimony and Findings

¶ 10    At the evidentiary hearing, E.M.E. testified that, without a court order to take the requested medications, he would try to "wean himself off" them. In addition to his general desire to avoid medications, he complained of several side effects, including weight gain, lethargy, sedation, muscle and joint pain, numbness, dry mouth, and tremors.[1] He also said that his sedation and pain symptoms had improved since the CMHHIP staff began giving him his medication at night.

¶ 11    As relevant here, Dr. Mattox testified that E.M.E.'s side effects were minimal, and if he discontinued medication, he would deteriorate significantly and become a danger to himself or others. Dr. Mattox verified that E.M.E.'s reported side effects could be caused by the medications and said that he was previously aware of some, but not all, of E.M.E.'s complaints. He explained that he would continue to monitor E.M.E.'s side effects and make any necessary treatment adjustments. Even in light of E.M.E.'s newly

---

[1] E.M.E. testified that he weighed 138 pounds when he arrived at CMHHIP and 178 pounds at the time of the hearing (approximately six months after his arrival). **(TR p. 20:1-3.)**

reported side effects, Dr. Mattox testified, E.M.E.'s deterioration when unmedicated was so concerning that his need for treatment outweighed any risks from the reported side effects.

¶ 12    At the conclusion of the testimony, the district court found Dr. Mattox's opinions to be credible and persuasive, and it adopted them. The court found that each of the *Medina* elements had been established by clear and convincing evidence. As relevant to the fourth *Medina* element, the court found that

- E.M.E.'s past behavior was very concerning;
- if E.M.E. discontinued his medication, there was a significant likelihood that he would harm himself and others;
- a failure to medicate E.M.E. would be more harmful than the risks posed by the medications; and
- E.M.E.'s liberty interest in refusing medication is outweighed by his need for treatment and the state's interest in treating him.

¶ 13    The court expressed concern about E.M.E.'s forty-pound weight gain, considering that E.M.E.'s mother had been recently diagnosed with diabetes, and it ordered CMHHIP to speak with him

about alternatives to address that side effect. In its written order, the court added a finding that E.M.E. did not have a legitimate reason to refuse medication.

## B. Analysis

¶ 14 We agree with E.M.E. that the record does not support a finding that he had no legitimate reason to refuse medication. Dr. Mattox testified that E.M.E.'s reported side effects could be caused by his medications and that he had observed at least some of the reported effects, including weight gain. And the court implicitly found that, under the circumstances, E.M.E.'s weight gain was a significant adverse effect. The desire to avoid significant adverse effects can constitute a bona fide and legitimate reason to refuse medication. *See People in Interest of Uwayezuk*, 2023 COA 69, ¶ 62.

¶ 15 Nonetheless, we conclude that ample evidence supports the district court's finding that the state's interest in treating E.M.E. outweighed his objection. Multiple physician affidavits and Dr. Mattox's testimony establish that, without treatment, E.M.E.'s condition would significantly deteriorate, and he would become a danger to himself and others. We conclude that this evidence

clearly and convincingly supports the court's finding that E.M.E.'s legitimate interest in refusing medication must yield to the state's legitimate interests in preserving his health and protecting the safety of those in CMHHIP. *See Medina*, 705 P.2d at 974; *Pflugbeil*, 834 P.2d at 846-47.

## IV. Disposition

¶ 16 The order authorizing the involuntary administration of medication is affirmed.

JUDGE LIPINSKY and JUDGE PAWAR concur.