25CA1394 Peo In Interest of Dudley 10-16-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1394
Arapahoe County District Court No. 25MH259
Honorable H. Clay Hurst, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Michelle Dudley,

Respondent-Appellant.

---

ORDER AFFIRMED

Division IV
Opinion by JUDGE SCHOCK
Harris and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 16, 2025

---

Ron Carl, County Attorney, Meghan Rubincam, Senior Assistant County
Attorney, Aurora, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1 Michelle Dudley appeals the district court's order certifying her for short-term treatment under section 27-65-109, C.R.S. 2025, and authorizing the involuntary administration of aripiprazole (Abilify), an antipsychotic medication. We affirm.

## I. Background

¶ 2 Dudley has been hospitalized multiple times over the past five years due to recurring psychosis. Most recently, Dudley's neighbor reported concerns about Dudley's mental health, including that she had been yelling at people in her apartment complex and seeing and hearing people in the elevator shaft. The neighbor also reported that Dudley had recently been observed abusing her dog.

¶ 3 Dudley was involuntarily admitted to Porter Hospital and presented with psychosis, disorganized thought, and delusions. She was diagnosed with schizoaffective disorder, bipolar type.

¶ 4 Dudley's treating physician requested that Dudley be certified for short-term mental health treatment under section 27-65-109 and sought an order authorizing the involuntary administration of Abilify to her. Dudley, through counsel, stipulated to short-term certification and to treatment with Abilify. The stipulation provided

1

that Abilify would be offered to Dudley on a voluntary basis and only administered involuntarily if Dudley refused to take it.

¶ 5    Before the short-term certification order expired, Dudley's psychiatrist, Dr. Colon-Sanchez, and psychologist, Dr. Zott, petitioned the district court to extend the certification and involuntary medication order.  This time, Dudley objected.

¶ 6    The district court held an evidentiary hearing, at which Dr. Colon-Sanchez, Dr. Zott, and Dudley testified.  After the hearing, the district court entered an order extending Dudley's certification for short-term mental health treatment.  The court found by clear and convincing evidence that Dudley had a mental health disorder, was gravely disabled, and had refused voluntary treatment.  The court also authorized the involuntary administration of Abilify to Dudley, finding that the People had proved all four elements of the test set forth in *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985).

## II.    Short-Term Certification

¶ 7    Dudley first argues that the evidence was insufficient to support the district court's finding that she was gravely disabled, as necessary to sustain the short-term treatment certification order. Because the district court's finding has record support, we disagree.

2

## A. Applicable Law and Standard of Review

¶ 8    The district court may certify a person for involuntary short-term treatment if it finds, by clear and convincing evidence, that the person has a mental health disorder and, as a result of the mental health disorder, is a danger to themselves or others or is gravely disabled.  § 27-65-109(1)(a); § 27-65-113(1), C.R.S. 2025.

¶ 9    As relevant in this case, a person is "gravely disabled" when they are "incapable of making informed decisions about or providing for [their] essential needs without significant supervision and assistance from other people."  § 27-65-102(17), C.R.S. 2025.  As a result of the inability to make informed decisions, a gravely disabled person is at risk of, among other things, "significant psychiatric deterioration, or mismanagement of [their] essential needs that could result in substantial bodily harm."  *Id.*; *see also People v. Taylor*, 618 P.2d 1127, 1134 (Colo. 1980) (noting that "basic personal needs" include "food, shelter, clothing, and medical care").

¶ 10   Whether a person is gravely disabled is a fact-specific determination that depends on the person's condition at the time the finding is made.  *People in Interest of Vivekanathan*, 2013 COA 143M, ¶ 14.  We review the record as a whole and in the light most

3

favorable to the People to determine whether the evidence is sufficient to support the district court's decision.  *People in Interest of Ramsey*, 2023 COA 95, ¶ 23.  We defer to the court's factual findings if sufficient evidence in the record supports them.  *Id.*

### B.    Analysis

¶ 11    The district court found that Dudley was gravely disabled because, without treatment, she "cannot make rational decisions" or "care for herself."  The court noted that, before her most recent certification, Dudley "was failing to meet her essential needs" and "was in a crisis mode" that "put her at risk of harm to herself."  The court acknowledged that Dudley was doing "remarkably well" while the certification was in effect.  But it found that she remained gravely disabled because she lacked insight into her condition and had not agreed "to receive the treatment that she so clearly needs."

¶ 12    The record supports the district court's findings.  Both Dr. Colon-Sanchez and Dr. Zott testified that Dudley lacks insight into her diagnosis and her need for medication to maintain her long-term stability.  They further explained that this lack of insight has resulted in repeated involuntary hospitalizations and mental health certifications in recent years.  Dr. Colon-Sanchez testified that

4

when Dudley is taking medication, she "is able to organize herself, maintain her job and functions very well in society." But when not hospitalized or certified, Dudley has historically stopped taking medication, causing her to revert to the delusions, psychosis, and hallucinations that interfere with her ability to care for herself.

¶ 13 Dr. Zott opined that Dudley is gravely disabled because "without the stability of treatment and medications," Dudley is unable to meet her daily needs, maintain sanitary living conditions, and care for her dog. She testified that Dudley becomes "extremely psychotic" and engages in "behaviors that put herself at risk." Dr. Colon-Sanchez described one instance when Dudley, while off her medication, "wasn't eating" and her house was in "disarray."

¶ 14 This testimony is sufficient to support the district court's finding that Dudley's mental health disorder — and her unwillingness to voluntarily engage in necessary treatment — made her "incapable of making informed decisions about or providing for [her] essential needs without significant supervision and assistance." § 27-65-102(17). It also supports a finding that, without certification, Dudley was at risk of "significant psychiatric deterioration[] or mismanagement of [Dudley's] essential needs." *Id.*

¶ 15 Dudley asserts that the district court's reliance on her psychiatric history and prior certifications when unmedicated means that she can only avoid certification by voluntarily consenting to treatment. But while Dudley's psychiatric history may have informed the district court's decision, the court did not find Dudley gravely disabled based on her psychiatric past. It found her gravely disabled based on her *existing condition.* Specifically, Dudley was *currently* refusing treatment, without which she was *currently* unable to provide for her own essential needs.

¶ 16 Thus, because the record supports the district court's finding that Dudley was gravely disabled, the district court did not err by extending Dudley's certification for short-term treatment.

### III. Involuntary Administration of Medication

¶ 17 Dudley next contends that the evidence was insufficient to support the district court's order authorizing the involuntary administration of Abilify to her. Specifically, she argues that the evidence was insufficient to establish that (1) she was incompetent to participate effectively in her treatment decisions; and (2) her need for the medication was sufficiently compelling to override her bona fide and legitimate interest in refusing to take it. We again disagree.

6

## A. Applicable Law and Standard of Review

¶ 18    A district court may order the involuntary administration of medication if the People prove by clear and convincing evidence that (1) the patient is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others at the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment. *Medina*, 705 P.2d at 973.

¶ 19    Application of the *Medina* test involves mixed questions of fact and law. *People v. Marquardt*, 2016 CO 4, ¶ 8. We defer to the district court's factual findings if they have record support and review its legal conclusions de novo. *Id.* When a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we must affirm if the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support

7

the order.  *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13.  The testimony of the treating psychiatrist alone may suffice.  *Id.* at ¶ 30.

### B. Incompetent to Effectively Participate

¶ 20    The first *Medina* element requires a finding that the patient is incompetent to effectively participate in the relevant treatment decision.  *Medina*, 705 P.2d at 973.  A court may not order the involuntary administration of medication unless the patient's mental illness has so impaired their judgment as to render them incapable of participating in decisions affecting their health.  *Id.*

¶ 21    Dr. Colon-Sanchez opined that Dudley's lack of insight into her mental illness and need for medication makes her incapable of effectively participating in decisions about her health, including as to her need for psychiatric medications.  Dr. Colon-Sanchez testified that Dudley "doesn't believe that she has a schizoaffective disorder," but instead "thinks it's mostly PTSD that is affecting her."  Dr. Colon-Sanchez explained, however, that Dudley's delusions and disorganized thought process are not symptoms of PTSD.  Dr. Zott agreed, opining that Dudley does not have insight into her diagnosis or her need to stay on medications for her long-term stability.

¶ 22    The district court credited Dr. Colon-Sanchez's and Dr. Zott's testimony and adopted Dr. Colon-Sanchez's opinion that Dudley was not capable of effectively participating in her treatment because she does not believe she has schizoaffective disorder. This testimony was sufficient to support the district court's finding. *See People v. Pflugbeil*, 834 P.2d 843, 847 (Colo. App. 1992).

¶ 23    Dudley asserts that the district court's encouragement for her to work with her treatment team to identify alternative treatments is inconsistent with its finding that she was incompetent to effectively participate in her treatment decisions. But read in context, the district court was simply acknowledging Dudley's concern about the side effects and urging her treatment team to consider whether there was any alternative. It was not retracting its immediately preceding finding that Dudley was "pretty clearly" unable to participate competently in her treatment. Indeed, right after the court's suggestion that Dudley "work[] with her treatment team," the court reiterated its finding that she did not have "the insight to effectively participate, because if there was no certification, she would not take her mental health medicine, because she does not believe she has a mental health disorder."

¶ 24    Given the ample evidence of Dudley's lack of insight into the severity of her illness and her need for the requested medication, and the weight the district court placed on her treating physicians' credibility, we conclude the evidence was sufficient to support the district court's finding that the first *Medina* element was satisfied.

### C.    Need for Treatment and Legitimate Interest in Refusing Treatment

¶ 25    In assessing the fourth *Medina* element — whether the patient's need for the requested medication is sufficiently compelling to override a bona fide and legitimate interest in refusing it — a court must consider "whether the patient's refusal is bona fide and legitimate" and, if it is, "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Medina*, 705 P.2d at 974.

¶ 26    The district court acknowledged that Dudley had legitimate concerns about the side effects of the medication. In particular, Dudley has endometriosis and believes that the Abilify is increasing her pain and causing irregular menstrual cycles. But in weighing

10

those legitimate concerns against the risk of "another psychotic episode, where her body and her mind is put at danger, where her dog cannot be cared for, where she can't care for herself," the court found the latter sufficiently compelling to override the former.

¶ 27 The district court's finding has record support. Dr. Colon-Sanchez testified that Dudley's prognosis without medication would mirror what has happened in the past when she stops taking the needed medication. Dr. Colon-Sanchez explained that if Dudley were to stop taking her medication, she would "start experiencing delusions, psychosis, hallucinations, and will become gravely disabled . . . possibly requiring inpatient hospitalization." Dr. Colon-Sanchez also testified that when Dudley was not taking her medication in the past, she "wasn't eating," she "wasn't taking care of her environment," and "[h]er house was in . . . disarray." Dr. Colon-Sanchez added that treatment with Abilify is necessary to prevent a significant and likely long-term deterioration of Dudley's mental condition and prevent "further episodes of decompensation in psychosis." On the other hand, Dr. Colon-Sanchez explained that Dudley is "very eloquent and organized" when taking Abilify.

¶ 28    Dudley contends that the state's interest in treating her is insufficient to overcome her bona fide and legitimate interest in avoiding side effects, including irregular menstrual cycles, weight gain, and anxiety.[1]  But Dr. Colon-Sanchez addressed each of these potential side effects, and the district court considered them.

¶ 29    As to the irregular menstrual cycles, Dr. Colon-Sanchez acknowledged that Abilify can affect prolactin levels, which can affect menstrual cycles.  But she explained that Dudley's prolactin level is within normal limits.  Moreover, Dr. Colon-Sanchez testified that Dudley's irregular menstrual cycles could be caused by her endometriosis and noted that Dudley is following up with a gynecologist.  Dr. Colon-Sanchez also acknowledged that the requested medication could cause weight gain but testified that she did not recall Dudley expressing this as a concern when they met.

¶ 30    As to Dudley's anxiety, Dr. Colon-Sanchez testified that anxiety is not a typical side effect of Abilify and was not something Dudley had previously mentioned to her.  Dr. Colon-Sanchez also

---

[1] Dudley also asserts, and testified in the district court, that the *certification order* "makes her feel stigmatized and unheard."  But she does not tie that concern to the requested medication.

testified that Abilify generally reduces manic episodes that may be associated with impulsive behavior. And Dr. Zott testified that Dudley seemed less distressed and anxious after taking the medication than she did when she was first hospitalized.

¶ 31 In the end, the district court recognized that Dudley had some legitimate concerns with taking the medication. It even urged her treatment team to continue to consider whether there was any other effective alternative. But it found that Dudley's dire need for the medication outweighed her concerns. Because the record supports the district court's finding, we may not disturb it. *See R.K.L.*, ¶ 13.

## IV. Disposition

¶ 32 The order is affirmed.

JUDGE HARRIS and JUDGE JOHNSON concur.