25CA1788 Peo in Interest of Chavira 12-11-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1788
Prowers County District Court No. 25MH7
Honorable Tarryn L. Johnson, Judge

---

People of the State of Colorado,

Petitioner,

In the Interest of Miriam Chavira,

Respondent-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE GROVE
J. Jones and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 11, 2025

---

No Appearance for Petitioner

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1 Respondent, Miriam Chavira, appeals the district court's order authorizing staff at Porter Adventist Hospital (Porter) to treat her with electroconvulsive therapy (ECT) without her consent. We affirm.

## I. Background

¶ 2 In August 2025, Chavira was certified for short-term treatment based on a physician's diagnosis of schizophrenia and catatonia that caused her to be gravely disabled. *See* § 27-65-109, C.R.S. 2025.

¶ 3 The Prowers County Attorney also filed a petition requesting that Porter be allowed to treat Chavira with ECT without her consent. According to the petition, Chavira's treating psychiatrist, Dr. Karina Drake, reported that Chavira had been admitted to the hospital with recurring catatonic symptoms resulting in weight loss and functional difficulties. Dr. Drake also reported that Chavira remained at high risk of unintentional self-harm as a result of poor oral intake, dehydration, and hypotension.

¶ 4 At the September 2, 2025, hearing on the petition, Dr. Drake testified that she had diagnosed Chavira with catatonia and that she had a historical diagnosis of schizophrenia. Dr. Drake testified

1

that when Chavira was admitted Porter she was "essentially mute and nonconversant," "refused to take any medication," and was "not eating or drinking." And Chavira would stand on a towel in the middle of her hospital room, moving very minimally, for ten to fifteen hours a day.

¶ 5 Dr. Drake explained that she started Chavira on involuntary medication in the form of Ativan on an emergency basis. Chavira later consented to the medication. Dr. Drake testified that since receiving Ativan, Chavira had improved and was now having "at least some oral intake," but was not progressing.

¶ 6 Dr. Drake described ECT treatment, including that it requires the patient to be under general anesthesia, and opined that it is the "gold standard" to treat catatonia. She also explained its side effects, most commonly including memory loss. Dr. Drake opined that without ECT, Chavira will likely need to be moved to a full-time care facility, and it is very likely she will again be hospitalized because of her inability to eat or drink while experiencing catatonic symptoms.

¶ 7 Chavira also testified, explaining why she opposes the petition for involuntary treatment.

¶ 8     The district court granted the petition authorizing Porter to involuntarily administer six ECT treatments.

## II.     Discussion

¶ 9     The district court found that the People had proven by clear and convincing evidence all four elements required under *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), to authorize the involuntary administration of medical treatment.

¶ 10     On appeal, Chavira challenges the sufficiency of the evidence supporting only the fourth *Medina* element, namely, whether the patient's need for the treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing the treatment.  *Id.*; *see also People in Interest of M.K.M.*, 765 P.2d 1075, 1076 (Colo. App. 1988) (approving of the use of the *Medina* criteria to analyze an order for involuntary ECT treatment).

¶ 11     We conclude that the evidence is sufficient to support the court's finding on the fourth *Medina* element.

## A.     Standard of Review

¶ 12     The district court's order presents a mixed question of fact and law. *People in Interest of Strodtman*, 293 P.3d 123, 131 (Colo. App. 2011).  We defer to the court's factual findings if there is evidence

supporting them, but we review the court's legal conclusions de novo. *Id.* We must determine whether the evidence, viewed as a whole and in the light most favorable to the prevailing party, is sufficient to support the court's order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. Testimony by a physician supporting a petition for involuntary treatment may be sufficient. *See id.* at ¶ 30 (citing *People v. Pflugbeil*, 834 P.2d 843, 847 (Colo. App. 1992)).

## B. Analysis

¶ 13 Chavira contends that the People failed to prove the fourth *Medina* element by clear and convincing evidence because of the "many serious side effects" of ECT, "some of which can be fatal." She asserts that the procedure itself is "intended to induce a seizure" and that when she underwent the procedure previously, she felt "powerless" and "docile." She also asserts that she suffered memory loss and struggled to find employment for a year.

¶ 14 At the hearing, the district court acknowledged Chavira's objections to ECT, finding them bona fide and legitimate and noting that it takes personal autonomy "very seriously." Nevertheless, the court noted that Chavira had responded to ECT favorably in the past and that the deterioration she would experience if ECT is not

4

administered now is not speculative. The court found that Chavira was receiving the maximum amount of Ativan and had improved to some extent, but still has life threatening symptoms, and that, according to Dr. Drake, there is no additional or alternative medication available to resolve the catatonia.

¶ 15    We acknowledge the evidence in the record that ECT has serious side effects including impaired memory that can last for months. And Dr. Drake testified that the procedure can result in death in about one in every ten thousand patients, which she opined were the same risks as any individual undergoing general anesthesia. Nonetheless, Dr. Drake testified that the risks do not outweigh the benefits associated with ECT and that "the potential decline of [Chavira's] current psychiatric symptoms [is] far more likely to cause significant issues and medical side effects than ECT." Dr. Drake also testified that Chavira had been hospitalized in the past and received ECT treatment for catatonic symptoms with good results.

¶ 16    Chavira also contends that there is a less drastic treatment because she consented to receiving Ativan and since taking the medication voluntarily, she had been eating and drinking. She

argues that even if Ativan is "technically less effective than ECT," it has been shown to generate improvement in her condition.

¶ 17 But Dr. Drake testified that Chavira still had "very prominent catatonic symptoms" even after taking medication and was already on the maximum allowable dosage of Ativan. She testified that Chavira was still standing immobile for ten to fifteen hours a day without moving, and "despite consistently taking the medications," Chavira's catatonic symptoms continue to "impair[] her ability to function." Dr. Drake explained that "there are no other medication options . . . to further resolve [the] catatonic symptoms" and that ECT is the only remaining treatment available.

¶ 18 In summary, the record sufficiently supports the district court's order for involuntary administration of ECT. Accordingly, we affirm the district court's order authorizing the involuntary administration of up to six ECT treatments, and required related medical testing and procedures, during the period of the short-term certification.

### III. Disposition

¶ 19 The order is affirmed.

JUDGE J. JONES and JUDGE SCHUTZ concur.