25CA2294 Peo in Interest of Bauer 01-29-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA2294
Mesa County District Court No. 25MH30193
Honorable Jeremy Chaffin, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Michael Bauer,

Respondent-Appellant.

---

ORDER AFFIRMED

Division VI
Opinion by JUDGE SCHOCK
Grove and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 29, 2026

---

Todd M. Starr, County Attorney, Richard B. Tuttle, Assistant County Attorney, Grand Junction, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    Michael Bauer appeals the district court's order certifying him for short-term mental health treatment and authorizing the involuntary administration of medications to him.  We affirm.

## I.    Background

¶ 2    Bauer was admitted to Centennial Peaks Hospital on an emergency mental health hold with symptoms of paranoid delusions of grandeur with religious preoccupation, along with a history of erratic and unsafe behavior during manic episodes.

¶ 3    Bauer's treating physician, Dr. Roderick O'Brien, filed a notice of certification for short-term mental health treatment under section 27-65-109, C.R.S. 2025, and included a letter describing Bauer's symptoms and behaviors.  He also requested an order allowing the involuntary administration of several medications.

¶ 4    At Bauer's request, the district court held an evidentiary hearing, where both Dr. O'Brien and Bauer testified.  Dr. O'Brien, whom the parties stipulated was an expert in psychiatry, testified that Bauer had a "working diagnosis" of bipolar disorder and was gravely disabled.  He also testified that Bauer had limited insight into his mental illness, had consented to taking only specific medications that would not sufficiently address his psychotic

symptoms, and had a history of consenting to treatment for long enough to be discharged from care only to then stop taking medications. Dr. O'Brien opined that without the requested medications, Bauer's condition would significantly deteriorate.

¶ 5 During Bauer's testimony, when his counsel asked if he had a mental illness, he responded, "I think in the past I have — yes, but I would say it's in the spiritual realm. You know, there's demons . . . ." He continued, "I no longer have any of those symptoms . . . whatsoever." Bauer did not dispute that he had previously expressed a belief that his "wife works for Satan," but he explained that "things changed — some are smart, some are stupid, but I have no dangerous technology in me." When asked what he meant by dangerous technology, he elaborated that "they can see the[] future — they meaning . . . not the ghosts from the past." Bauer further testified that before he was hospitalized, he was living in the desert without a home "because of [his] beliefs," including "dangerous technology . . . like PFL's microwaves."

¶ 6 At first, Bauer testified that he would take the recommended medications because "[Dr. O'Brien's] the expert." But he later said

he would object to taking the medications because he was "not having any type of psychosis" and was "functioning just fine."

¶ 7      The district court confirmed the short-term certification and authorized the hospital to involuntarily administer some but not all of the requested medications. In its oral ruling, the court credited Dr. O'Brien's testimony, noting that Bauer "struggled to control his behavior" throughout the hearing, often "interrupting and going off on tangents" and "display[ing] . . . pressured and rapid speech." The court found that Bauer has "difficulty recognizing reality" and made several delusional statements related to dangerous technology and his reasons for living without shelter in the desert. Thus, the court found that Bauer was "gravely disabled" because he was incapable of making informed decisions or meeting his essential needs without significant supervision or assistance.

¶ 8      As to the involuntary administration of medication, the court found, as relevant here, that Bauer was incompetent to effectively participate in his treatment decisions because he was unwilling to take the necessary medications and did not understand that the medications he was willing to take did not effectively treat his disorder. The court also found that Bauer had not provided any

3

clear bona fide and legitimate interest in refusing treatment and that the benefits of the medication outweighed any risks to Bauer. Specifically, the court found that without the medication, Bauer's condition would "deteriorate, [he] would remain hospitalized, would get worse and [the] worsening could potentially be permanent."

## II.     Short-Term Certification

¶ 9     Bauer first argues that the evidence was insufficient to support the district court's finding that he was gravely disabled, as necessary to sustain the short-term treatment certification order. Because the record supports this finding, we disagree.

### A.     Applicable Law and Standard of Review

¶ 10     A person may be certified for up to three months of treatment if, as relevant here, the person is gravely disabled due to a mental health disorder.  § 27-65-109(1)(a), C.R.S. 2025; *People in Interest of Ramsey*, 2023 COA 95, ¶ 25.  A person is considered gravely disabled when they are "incapable of making informed decisions about or providing for [their] essential needs without significant supervision and assistance from other people."  § 27-65-102(17), C.R.S. 2025.  As a result of an inability to make informed decisions, a gravely disabled person is at risk of, among other things,

4

"significant psychiatric deterioration, or mismanagement of [their] essential needs that could result in substantial bodily harm." *Id.*

¶ 11　　In a hearing regarding short-term certification, the People have the burden of proving that the person is gravely disabled by clear and convincing evidence. § 27-65-113(1), C.R.S. 2025; *Ramsey*, ¶ 25. A psychiatrist's testimony alone may suffice to meet this burden. *People v. Pflugbeil*, 834 P.2d 843, 847 (Colo. App. 1992).

¶ 12　　Whether a person is gravely disabled is a fact-specific determination that depends on the person's condition at the time the finding is made. *People in Interest of Vivekanathan*, 2013 COA 143M, ¶ 14. We review the record as a whole and in the light most favorable to the People to determine whether the evidence is sufficient to support the district court's order. *Ramsey*, ¶ 23. We review the court's legal conclusions de novo and defer to its factual findings if sufficient evidence in the record supports them. *Id.*

## B.　Analysis

¶ 13　　In concluding that Bauer is gravely disabled, the district court found that he had a "substantial disorder of the cognitive, volitional, and emotional processes that grossly impairs his judgment or capacity to recognize reality or control his behavior."

The court found that Bauer could meet his essential needs only with significant assistance from hospital personnel and, prior to his admission to the hospital, from his wife. In particular, it noted that Bauer had chosen to live in the desert without suitable housing because of his delusions and refused to get a driver's license, at least in part, because he believes it bears "the mark of Satan."

¶ 14 The record supports the district court's findings. Dr. O'Brien testified that Bauer believes his wife "works for Satan" and had also expressed the belief that Dr. O'Brien worked for Satan. He also testified that Bauer refused "to participate in some of the social basic needs like having a driver's license that was obviously influenced by his psychotic fear that there's the . . . mark of the beast on his driver's license." Dr. O'Brien explained that Bauer had exhibited behaviors consistent with auditory and visual hallucinations and had a history of failing to comply with voluntary treatment and medication. Although Dr. O'Brien testified that Bauer can dress himself, tend to his own hygiene, and get himself to meals while hospitalized, he opined that Bauer would be unable to provide for his essential needs without significant supervision.

¶ 15    In arguing that he is not gravely disabled, Bauer emphasizes his own testimony that, upon release, he would stay at a shelter or with a friend and find a job.  He also cites his testimony that he was "absolutely" capable of thinking clearly and making appropriate decisions about medications.  But Bauer also testified that he does not believe he has a mental illness.  And Dr. O'Brien opined that he would likely stop taking his medications if he were discharged.

¶ 16    The district court expressly credited Dr. O'Brien's testimony over Bauer's, and we are bound by that determination.  *See Ramsey*, ¶ 23 ("The resolution of conflicts in testimony and determinations of the credibility of the witnesses are solely within the province of the fact finder.").  That testimony was sufficient to support the district court's finding that Bauer is ""incapable of making informed decisions about or providing for [his] essential needs without significant supervision and assistance from other people." § 27-65-102(17).  We therefore conclude that the district court did not err by certifying Bauer for short-term treatment.

III.    Involuntary Administration of Medication

¶ 17    Bauer next contends that the evidence was insufficient to support the district court's order authorizing the involuntary

7

administration of medication to him. He argues that the evidence was insufficient to establish that (1) he was incompetent to participate effectively in his treatment decisions; and (2) his need for the medication was sufficiently compelling to override his bona fide and legitimate interest in refusing it. We again disagree.

### A. Applicable Law and Standard of Review

¶ 18 A district court may order the involuntary administration of medication if the People prove by clear and convincing evidence that

> (1) the patient is incompetent to effectively participate in the treatment decision;
>
> (2) the treatment by antipsychotic medication is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient's causing serious harm to himself or others in the institution;
>
> (3) a less intrusive treatment alternative is not available; and
>
> (4) the patient's need for treatment by antipsychotic medication is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment.

*People v. Medina*, 705 P.2d 961, 973 (Colo. 1985).

¶ 19 Application of the *Medina* test involves mixed questions of fact and law. *People v. Marquardt*, 2016 CO 4, ¶ 8. We defer to the

8

district court's factual findings if they have record support and review its legal conclusions de novo. *Id.* When a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we must affirm if the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. The testimony of the treating psychiatrist may suffice. *Id.* at ¶ 30.

### B. Incompetent to Effectively Participate

¶ 20    The first *Medina* element requires the People to prove that the patient is incompetent to effectively participate in the relevant treatment decision. *Medina*, 705 P.2d at 973. This element is satisfied if the court finds that "the patient's mental illness has so impaired his judgment as to render him 'incapable of participating in decisions affecting his health.'" *Id.* (citation omitted).

¶ 21    The district court found that Bauer is incompetent to effectively participate in his treatment decisions because he did not believe he needed medication, denied having psychotic symptoms, and had a history of failing to take medication as needed.

¶ 22    The record supports the district court's findings. When Dr. O'Brien was asked to describe Bauer's insight into his illness, Dr.

9

O'Brien answered that "he appears to have enough insight to know he needs to take a medicine," but that the belief "derived from that recognition that we're trying to compel him to take medicine, rather than a recognition that the medicine would be for the alleviation of symptoms."  As Dr. O'Brien further explained, Bauer was in fact only willing to take two specific medications, which, in Dr. O'Brien's opinion, would not be sufficient to manage Bauer's symptoms.

¶ 23    Bauer highlights the first part of this testimony — that he had some insight into his mental illness — while leaving out the second part — that this insight was limited to knowing he needed to take *a* medicine and that he did not recognize his medical diagnosis or psychotic symptoms.  Similarly, Bauer asserts that he is competent to participate in his treatment decisions because he agreed to take two specific medications.  But again, Dr. O'Brien testified that those two medications were ineffective in treating Bauer's mental illness.

¶ 24    Beyond this, Bauer relies on his own testimony that he felt great, was thinking clearly, had plans for his future, and would consent to the medication Dr. O'Brien ordered.  But the district court did not credit Bauer's testimony that he would voluntarily take the recommended medication.  Instead, it credited Dr.

O'Brien's testimony concerning Bauer's history of taking medication only long enough to be discharged and his opinion that Bauer likely would not continue to take the required medications without a court order. *See People in Interest of Strodtman*, 293 P.3d 123, 132 (Colo. App. 2011) (affirming finding that patient was incompetent to effectively participate in treatment decision because, among other reasons, she had not "embraced her need for treatment").

¶ 25    Dr. O'Brien's testimony concerning Bauer's lack of insight into the severity of his illness and his need for the requested medications, which the district court credited, was sufficient to support the finding that the first *Medina* element was satisfied.

### C.    Need for Treatment and Legitimate Interest in Refusing Treatment

¶ 26    In evaluating the fourth *Medina* element — whether the patient's need for the requested medication is sufficiently compelling to override a bona fide and legitimate interest in refusing it — a court must consider "whether the patient's refusal is bona fide and legitimate" and, if it is, "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the

11

life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Medina*, 705 P.2d at 974.

¶ 27 The district court found that Bauer had not presented a bona fide and legitimate interest in refusing the medications. On appeal, Bauer does not directly challenge this finding. Nor does he identify a specific bona fide and legitimate interest. Instead, he simply lists the potential side effects of the medications and cites Dr. O'Brien's testimony that, because Bauer is overweight, they would want to "be mindful" of the potential for metabolic syndrome.

¶ 28 But even assuming that Bauer had a bona fide and legitimate interest in avoiding side effects, the record supports the district court's finding that his need for the medications is sufficiently compelling to override those concerns. Notably, Bauer does not contest the district court's finding on the second *Medina* element — that the medications are necessary to prevent a significant and likely long-term deterioration in his mental health condition. Specifically, Dr. O'Brien testified that without medication, Bauer's condition would worsen considerably. He also explained that prolonged psychosis reduces the efficacy of medications, worsens the prognosis, and increases the severity of symptoms.

¶ 29    Given this testimony, and the lack of any evidence that Bauer has experienced any side effects, the record supports the district court's finding that Bauer's need for the medications outweighed any bona fide and legitimate interest he had in refusing them.

## IV.    Disposition

¶ 30    The order is affirmed.

JUDGE GROVE and JUDGE YUN concur.