25CA1642 Peo in Interest of Harris 10-30-2025

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 25CA1642
Mesa County District Court No. 25MH30128
Honorable Gretchen B. Larson, Judge

_____

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of James Harris,

Respondent-Appellant.

_____

ORDERS AFFIRMED

Division VI
Opinion by JUSTICE MARTINEZ*
Welling and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

_____

Todd M. Starr, County Attorney, Richard B. Tuttle, Assistant County Attorney, Brad Junge, Assistant County Attorney, Grand Junction, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Respondent, James Harris, appeals the district court's orders (1) certifying him for short-term treatment and (2) authorizing the administration of medications to him without his consent. He contends that the evidence was insufficient to sustain either order. We disagree and therefore affirm.

## I.     Background

¶ 2     In late July 2025, Harris voluntarily sought treatment at a hospital emergency room (the ER) and, due to his symptoms of psychosis, was placed on an emergency mental health hold.

¶ 3     He was transferred to Centennial Peaks Hospital (the hospital) for inpatient psychiatric care. His symptoms included responding to internal stimuli, having conversations with people who were not there, expressing delusional beliefs and disorganized thoughts, and being manic and verbally aggressive. His psychiatrist at the hospital diagnosed him with schizoaffective disorder.

¶ 4     The psychiatrist filed a notice of certification for short-term treatment of Harris under section 27-65-109, C.R.S. 2025, along with a request for authorization to administer to Harris several antipsychotic medications, an antianxiety medication, and a medication to treat any side effects.

1

¶ 5     At the hearing, the psychiatrist and Harris both testified. The psychiatrist, whom the parties stipulated was an expert in psychiatry, testified that Harris's schizoaffective disorder constitutes a substantial disorder that grossly impairs his judgment, his ability to recognize reality, and his ability to control his behavior. In support of the short-term certification, the psychiatrist opined, among other things, that Harris is gravely disabled because he is incapable of making informed decisions about or providing for his essential needs without significant supervision and assistance from other people. In terms of medications, the psychiatrist requested authorization to involuntarily administer to Harris the following: (1) three antipsychotic medications — Haldol (haloperidol), Prolixin (fluphenazine), and Invega (paliperidone); (2) Ativan (lorazepam), an antianxiety medication; and (3) Cogentin (benztropine), an as-needed medication to treat any side effects. The psychiatrist opined that the medications are "essential" to effectively treat Harris's mental health disorder, and that without treatment, "[h]e will definitely continue to deteriorate."

¶ 6    The psychiatrist also testified that Harris does not possess any insight into his mental health disorder, explaining that Harris has expressed that he doesn't need the medications because he doesn't have a mental illness. The psychiatrist testified that Harris has been voluntarily taking one pill of the antipsychotic medication Zyprexa (olanzapine) at night as a sleep aid. The psychiatrist testified that Harris has only "improved slightly" taking the single pill of Zyprexa, explaining that "there's a slight improvement in terms of mania and slight reduction of the aggressiveness." However, the psychiatrist testified that Harris has already "plateaued" on the single pill of Zyprexa and remains gravely disabled, explaining that the single pill of Zyprexa has not addressed his psychosis, delusions, or hallucinations, and his symptoms continue to be "very disruptive and severe."

¶ 7    During Harris's testimony, when he was asked whether he has a mental illness, he responded, "I kind of do. . . . It's called Juggalo Clown syndrome. We're almost like bipolar." When he was asked whether he has schizoaffective disorder, he responded, "I don't know. I don't believe much of what they say." However, Harris repeatedly made clear during his testimony that he was only willing

to take the single pill of Zyprexa at night as a sleep aid, and that he wants to be either immediately transferred to a different facility or released so he can stay at his girlfriend's house. As we explain in more detail in our analysis below, he also testified regarding the reasons he does not want to take the medications requested by the psychiatrist.

¶ 8 Following the testimony, the district court found that the psychiatrist's testimony was "much more compelling and persuasive" than Harris's testimony. The court then certified Harris for short-term treatment based on, among other findings, a finding that Harris is gravely disabled as a result of his schizoaffective disorder. *See* § 27-65-109(1)(a). Further, after analyzing the four elements of the test from *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), the court also granted the request for authorization to involuntarily administer the requested medications.

## II. Standards of Review

¶ 9 On a challenge to the sufficiency of the evidence, we review the record de novo to determine whether the evidence, viewed as a whole and in the light most favorable to the State, is sufficient to support the district court's order. *People in Interest of Ramsey*,

4

2023 COA 95, ¶ 23. We review de novo the court's conclusions of law and defer to the court's findings of fact if sufficient evidence in the record supports them. *Id.* The resolution of conflicts in testimony and determinations of witness credibility are solely within the province of the fact finder. *Id.*

### III. Certification for Short-Term Treatment

¶ 10 A person may be certified for up to three months of treatment under section 27-65-109 if he has a mental health disorder and, as a result of the disorder, (1) is a danger to himself or others or (2) is gravely disabled. § 27-65-109(1)(a); *Ramsey*, ¶ 25. The State has the burden of proving that by clear and convincing evidence, but a psychiatrist's testimony alone may be sufficient to do so. § 27-65-113(1), C.R.S. 2025; *Ramsey*, ¶ 25; *People v. Pflugbeil*, 834 P.2d 843, 846-47 (Colo. App. 1992).

¶ 11 Again, the district court based the certification on its finding that Harris is gravely disabled as a result of his schizoaffective disorder. The statutory scheme defines "gravely disabled" as "a condition in which a person, as a result of a mental health disorder, is incapable of making informed decisions about or providing for the

person's essential needs without significant supervision and assistance from other people." § 27-65-102(17), C.R.S. 2025.

¶ 12　　In explaining its finding that Harris is gravely disabled, the district court found that if he were released from the hospital, he would be dependent on his girlfriend to provide shelter for him, and his behavior in public would likely lead to interaction with law enforcement.  But more importantly for our review, the court also found that Harris "is not at this time capable of making informed decisions about [his] medical or mental health issues."  In support of that, the court found that (1) Harris "does have schizoaffective disorder"; (2) he "is still currently psychotic and in need of medications . . . to address his psychosis"; (3) "the medications that [the psychiatrist] is requesting in this case are essential to treat [his] mental health issues"; and (4) "[h]e has been advised of voluntary treatment and has refused."  As explained above in our description of the hearing testimony, those findings are well supported by the psychiatrist's testimony.  *See Ramsey*, ¶ 23.

¶ 13　　In arguing that the evidence was insufficient to support the district court's finding that he is gravely disabled, Harris relies on three particular pieces of evidence.  First, he points out that "[h]e

6

initially sought assistance voluntarily [by going to the ER].”
Although Harris's initial act of seeking help at the ER did evidence
some ability to make informed decisions at that time, he has now
been thoroughly evaluated at the hospital regarding how best to
treat his schizoaffective disorder but he has not been willing to take
the medications that, according to the district court's finding and
the psychiatrist's testimony, are essential to effectively treat his
condition.  That supports the finding that Harris "is incapable of
making informed decisions" about providing for his "essential
needs."  § 27-65-102(17).

¶ 14     Second, Harris emphasizes that he "has agreed to take
[Zyprexa]" voluntarily.  But he has agreed only to take one pill of
Zyprexa in the evening as a sleep aid.  The district court found that
Harris's "continued use of [one] Zyprexa [pill at night] will not
resolve his mental health issues," which, as explained above in our
description of the hearing testimony, is well supported by the
psychiatrist's testimony.  *See Ramsey*, ¶ 23.

¶ 15     And third, Harris points out that when the psychiatrist was
asked at the hearing whether Harris was presently able to take care
of his basic needs, "[the psychiatrist] simply answered, 'He is not

7

able to' without providing any explanation to support his opinion." But the psychiatrist was not explicitly asked to support his opinion at that point in the questioning. But the psychiatrist also testified that Harris "couldn't manage any medication for a prolonged time without nurses overseeing that." Moreover, the psychiatrist's testimony as a whole strongly supports the district court's finding that, due to Harris's refusal to take the medications that are "essential" to treat his schizoaffective disorder, he is incapable of making informed decisions about his essential needs. *See* § 27-65-102(17); *Ramsey*, ¶ 23.

¶ 16    For these reasons, we will not disturb the district court's finding that Harris is gravely disabled under sections 27-65-109(1)(a) and 27-65-102(17). *See Ramsey*, ¶ 23.

IV.    Involuntary Administration of Medication

¶ 17    Regarding Harris's appeal of the medication order, we first note that a district court may authorize the involuntary administration of medication if the State demonstrates by clear and convincing evidence that (1) the patient is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the

patient's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others at the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment. *Medina*, 705 P.2d at 973. Here too, a psychiatrist's testimony alone may be sufficient to satisfy the *Medina* test by clear and convincing evidence. *See People in Interest of R.K.L.*, 2016 COA 84, ¶ 30.

¶ 18     Harris does not contest the district court's rulings that the first, second, and third *Medina* elements were satisfied. However, he challenges the sufficiency of the evidence supporting the fourth *Medina* element — that his need for the medications is sufficiently compelling to override any bona fide and legitimate interest he has in refusing to take them voluntarily.

¶ 19     In analyzing the fourth *Medina* element, a court first determines "whether the patient's refusal is bona fide and legitimate." *Medina*, 705 P.2d at 974. If it is, the court then determines "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the

legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 20     On appeal, Harris advances two interests he has in not taking the medications. First, he asserts that he is "greatly agitated" and in "great distress" in having to take medications against his will. The district court briefly addressed this interest, saying, "Mr. Harris understandably does not want to take medications. The Court recognizes that, that he doesn't want injections." However, the court ultimately found that Harris's "need for treatment is sufficiently compelling to override any bona fide and legitimate interest that he may have in refusing medications."

¶ 21     The second interest Harris advances on appeal is that taking the medications violates his religious beliefs, an issue he testified to and that his counsel argued during closing argument. For example, Harris testified, "[The psychiatrist is] trying to feed me drugs against my religious beliefs. I'm a Universal Life Church minister. . . . Please do not make me take [the psychiatrist's] drugs against my religious beliefs." In its oral ruling, the district court did not specifically address that interest, but again, it found generally

that "any" bona fide and legitimate interest Harris may have in refusing medications is overridden by his compelling need for treatment.

¶ 22    We assume that Harris's interest based on his religious beliefs is bona fide and legitimate even though he did not explain *why* he may not, or should not, take the medications at issue due to his religious beliefs.  Thus, we must determine whether the district court erred in how it weighed that interest, and Harris's agitation and distress, against Harris's need for treatment with the medications.  Again, the psychiatrist testified that the medications were "essential" to treat Harris's mental health disorder, and he opined that, without them, Harris was at risk of "significant psychiatric deterioration."  The risk of "significant psychiatric condition" is particularly compelling given the evidence of the severity of Harris's psychiatric condition during his time at the hospital leading to the hearing.  Given the district court's finding that the psychiatrist's testimony was "much more compelling and persuasive" than Harris's testimony, we discern no error in its finding that Harris's "need for treatment is sufficiently compelling to

11

override any bona fide and legitimate interest[s] that he may have in refusing medications."

## V.     Disposition

¶ 23     The orders are affirmed.

JUDGE WELLING and JUDGE SULLIVAN concur.