25CA1634 Peo in Interest of May 11-13-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1634
Pueblo County District Court No. 25MH30080
Honorable Amiel Markenson, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Harmon Michael May,

Respondent-Appellant.

ORDER AFFIRMED

Division A
Opinion by JUDGE HAWTHORNE*
Román, C.J., and Martinez*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 13, 2025

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Harmon Michael May appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (CMHHIP) to involuntarily administer medication to him.  We affirm.

## I.    Background

¶ 2    May was committed to CMHHIP for competency restoration in a criminal case.  According to the affidavit of Dr. Hareesh Pillai, May's treating physician, May exhibits symptoms of intense delusions and paranoia, disorganization of thought, impulsivity, and pressured speech.  He is diagnosed with Psychosis, Not Otherwise Specified.

¶ 3    CMHHIP began administering psychiatric medications to May on an emergency basis after an incident where he "began calling 911 repeatedly" and, once he was redirected, "started banging on the door to his room with both forearms."  Staff observing the incident reported that May hit the door with such force that they were concerned he might fracture his arms.  The People then petitioned for a six-month order authorizing the continued involuntary administration of three medications: Olanzapine (also known as Zyprexa), Valproic Acid (also known as Depakote), and Thorazine (also known as Chlorpromazine).

¶ 4　　The district court held an evidentiary hearing on the petition. Dr. Pillai testified, as did May. At the end of the hearing, the court found that Dr. Pillai had testified "credibly and persuasively," and concluded that the People had proved all four factors set forth in *People v. Medina*, 705 P.2d 961 (Colo. 1985). The court issued an order authorizing CMHHIP staff to administer the requested medications to May against his will.

## II.　Discussion

¶ 5　　May concedes that the People met their burden of proving, by clear and convincing evidence, the first three *Medina* factors. He contends, however, that the evidence presented at the hearing was insufficient to prove the fourth *Medina* factor. We are not persuaded.

### A.　Applicable Law and Standard of Review

¶ 6　　A district court may order the involuntary administration of medication to a patient only if the People prove, by clear and convincing evidence, each of the four factors outlined in *Medina*:

> (1) the patient is incompetent to effectively participate in the treatment decision;
>
> (2) treatment by antipsychotic medication is necessary to prevent a significant and likely

long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient's causing serious harm to himself or others in the institution;

(3) a less intrusive treatment alternative is not available; and

(4) the patient's need for treatment by antipsychotic medication is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment.

*Id.* at 963-64. A psychiatrist's testimony may suffice to meet this burden. *See People v. Pflugbeil*, 834 P.2d 843, 847 (Colo. App. 1992).

¶ 7     When a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we review the district court's legal conclusions de novo but defer to its findings of fact if they have record support. *People v. Marquardt*, 2016 CO 4, ¶ 8. We view the evidence as a whole and in the light most favorable to the People to determine if it is sufficient to support the district court's order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. If it is, we may not substitute our judgment for that of the district court. *See People in Interest of A.J.L.*, 243 P.3d 244, 255 (Colo. 2010).

3

### B. Fourth *Medina* Factor

¶ 8　　May contests the district court's findings regarding only the fourth *Medina* factor that requires a court to first determine "whether the patient's refusal is bona fide and legitimate." *Medina*, 705 P.2d at 974. If so, the court must determine "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 9　　The district court found that May did not have a bona fide and legitimate interest in refusing treatment based on his religious beliefs. However, it noted that May also testified that he did not like receiving shots, which the court found legitimate because of the intrusiveness, pain, and bruising shots could cause. Nonetheless, the court found that May's prognosis, without treatment, is so unfavorable that his personal preference must yield to the legitimate interest of the State in preserving his life and health while he is placed in the charge of CMHHIP. The record supports these findings.

¶ 10 Dr. Pillai testified that without the requested medications May "had odd delusions and paranoia" including comments that he was "being killed every night in jail and being reincarnated every day." And Dr. Pillai described May's "bizarre" behavior including the incident the precipitated emergency medications during which CMHHIP staff were concerned about May breaking his arms when he repeatedly banged them against a door. May admitted to banging his arms repeatedly — although he claimed it was against a brick wall rather than a door. May also agreed that banging his arms in such a way was "not smart to do," and that he could have injured himself.

¶ 11 May asserts that the district court specifically found that he was not a danger to others in the institution and, accordingly, the State's interest was "diminished considerably" and that his religious reasons for preferring a "drug-free lifestyle" outweigh the State's interest in forcibly medicating him.

¶ 12 First, we note that the court found no bona fide reason based on May's religious beliefs because he testified that he does not believe in one religion. Indeed, May never connected his desire to live a "drug-free lifestyle" to any particular religion or religious

belief. Nonetheless, the court found May had a legitimate reason to refuse medication by injection because he did not like shots. Moreover, the court found that even if it made the "wrong" finding about his legitimate interests, the prognosis without treatment is so unfavorable that May's personal preference must yield to the State's legitimate interest in preventing him from harming himself.

¶ 13 Second, the court specifically found that medicating May was not necessary to protect the safety of others in the institution, but was to protect May from himself. And when asked if May posed a serious risk of harm to himself or others without medication, Dr. Pillai responded, "I believe to himself."

¶ 14 May provides no support for his assertion that the finding that he was only a danger to himself, and not to others, somehow lessened the State's legitimate interests. Dr. Pillai testified that without medication he believed May would experience a significant and likely long-term deterioration of his mental condition. He also testified that May was not experiencing significant side effects from the medication and that since starting emergency medication May had shown steady improvement of his psychotic symptoms. Dr. Pillai also testified that without medication May poses a serious risk

6

of harm to himself and that the failure to medicate would be more harmful than the risks posed by the use of the medications.

¶ 15    The district court credited Dr. Pillai's testimony, and we conclude that the testimony is sufficient to support the court's findings that May's need for treatment by the prescribed medications is sufficiently compelling to override his interest in refusing treatment.  *Id.* at 973; *R.K.L.*, ¶¶ 13, 30.

## III.    Disposition

¶ 16    We affirm the order.

CHIEF JUDGE ROMÁN and JUSTICE MARTINEZ concur.