25CA1952 Peo in Interest of Hickey 12-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1952
Pueblo County District Court No. 25MH30088
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Adrian Russell Hickey,

Respondent-Appellant.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE MEIRINK
Fox and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 24, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1      Respondent, Adrian Russell Hickey, appeals the district court order authorizing staff at the Colorado Mental Health Hospital in Pueblo (CMHHIP) to medicate him against his will. We affirm.

## I.     Background

¶ 2      Hickey was admitted to CMHHIP after being found incompetent to proceed on criminal charges. According to the affidavit of Dr. Hareesh Pillai, Hickey's treating physician, Hickey suffers from schizoaffective disorder. He has a long history of psychiatric hospitalizations, medication refusal, and impulsive, assaultive, and self-harming behavior.

¶ 3      Hickey was taking Zyprexa, Depakote, and two antidepressants when he arrived at CMHHIP, but he still displayed self-harming behavior, delusions, and paranoia. The staff at CMHHIP attempted to improve his symptoms by reducing the antidepressant medications, but Hickey resisted the change by refusing to take Zyprexa and Depakote. At the end of four days during which Hickey banged his head, swallowed a battery, attempted to fight staff, and damaged property, CMHHIP began administering medications on an emergency basis. A few days later, Hickey punched a peer, causing multiple facial fractures.

¶ 4    The People petitioned for a six-month order authorizing the involuntary administration of Zyprexa, Depakote, and Thorazine. Dr. Pillai clarified that CMHHIP would administer Zyprexa and Depakote on a scheduled basis, and Thorazine only as needed for episodes of acute agitation or refusals of oral Depakote. At the evidentiary hearing, which Hickey attended remotely, the district court heard testimony from only Dr. Pillai and a CMHHIP staff member. The staff member was called to testify because they saw Hickey rip a laptop in two and leave the room during Dr. Pillai's testimony at the hearing. Because Hickey "voluntarily chose[] to walk out" of the room, he did not testify. Defense counsel, nevertheless, asked to "continue [to] have the hearing, even though [Hickey] . . . cho[se] not to participate. . . ."

¶ 5    Dr. Pillai testified about each of the four elements required for involuntary administration of medication under *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985).[1] He explained that although

---

[1] When the state seeks to administer antipsychotic drugs to a mentally ill criminal defendant involuntarily so that he can stand trial, a reviewing court applies the Supreme Court's test in *Sell v. United States*, 539 U.S. 166, 178 (2003). However, reviewing courts apply state law tests if the state, as here, seeks to administer antipsychotics involuntarily for "a different purpose," including a

2

Hickey had reported potential side effects like anxiety and depression, Hickey refused Zyprexa and Depakote primarily based on his strong preference to be medicated with only antidepressants. Based on a review of multiple hospitalizations, Dr. Pillai opined that treating Hickey with a combination of Zyprexa and Depakote — and no additional medications — was appropriate and effective. Indeed, Hickey's symptoms would linger or worsen (1) without Zyprexa and Depakote; and (2) when Zyprexa and Depakote were paired with antidepressants.

¶ 6 At the conclusion of the hearing, the district court found the testimony of Dr. Pillai and the CMHHIP staff member to be credible. It found that the People had provided clear and convincing evidence for each of the *Medina* elements, and it issued an order authorizing CMHHIP staff to administer all of the requested medications for a period of six months.

¶ 7 On appeal, Hickey challenges the sufficiency of the evidence supporting the court's order.

---

purpose "related to the individual's dangerousness, or . . . the individual's own interests where refusal to take drugs puts his health gravely at risk." *Id.* at 181-82.

3

## II.    Legal Authority and Standard of Review

¶ 8    A district court may authorize the involuntary administration of medication to a patient if the treating facility establishes each of the following *Medina* elements by clear and convincing evidence: (1) the patient is incompetent to participate effectively in the treatment decision; (2) treatment by medication is necessary either to prevent a significant and likely long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient causing serious harm to himself or others in the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's need for treatment with medication is sufficiently compelling to override his bona fide and legitimate interest in refusing medication.  *Id.*; *see People in Interest of Strodtman*, 293 P.3d 123, 131 (Colo. App. 2011).  A physician's testimony alone may constitute clear and convincing evidence.  *See People v. Pflugbeil*, 834 P.2d 843, 846-47 (Colo. App. 1992).

¶ 9    When, as here, a patient challenges the sufficiency of the evidence, we review the record as a whole and, viewing it in the light most favorable to the People, determine whether the evidence is sufficient to support the court's decision.  *People in Interest of*

*Ramsey*, 2023 COA 95, ¶ 23. We review the court's conclusions of law de novo and defer to its findings of fact if supported by evidence in the record. *People v. Marquardt*, 2016 CO 4, ¶ 8. We also defer to the district court's resolution of evidentiary conflicts and its determinations of witness credibility, the weight of the evidence, and the inferences to be drawn from it. *See People in Interest of R.C.*, 2019 COA 99M, ¶ 7.

### III.  Analysis

¶ 10    Hickey challenges the sufficiency of the evidence for only the first and fourth *Medina* elements. He argues that Dr. Pillai's testimony did not show (1) that he was incapable of effectively participating in treatment decisions; or (2) a sufficiently compelling need to override his interests in refusing the requested medications. *See Medina*, 705 P.2d at 973-74. We conclude that the record provides ample support for the court's findings.

### A.  The First *Medina* Element

¶ 11    In its findings on this element, the court noted that Hickey's perception that he suffers from anxiety and depression showed some insight into his mental illness. Hickey argues that for this

reason, the evidence offered by the People for the first *Medina* element falls short. We disagree.

¶ 12 A patient is incompetent to effectively participate in treatment decisions when his "mental illness has so impaired his judgment as to render him 'incapable of participating in decisions affecting his health.'" *Id.* at 973 (citation omitted). Although this *Medina* element may be satisfied if a patient fails to recognize that he has a mental illness, *see People in Interest of C.J.R.*, 2016 COA 133, ¶ 32, the converse is not necessarily true.

¶ 13 Dr. Pillai — whose testimony the district court found to be credible — testified that Hickey does not understand his symptoms, how the symptoms influence his behavior, or how treatments affect his symptoms. He further testified that although antidepressant medications were contraindicated for Hickey's treatment, Hickey frequently requested them and consequently required much higher doses or multiple types of antipsychotics to reduce his symptoms. For these reasons, Dr. Pillai opined that Hickey was incompetent to effectively participate in his treatment decisions. Dr. Pillai's testimony was unrefuted because Hickey voluntarily left the proceedings.

¶ 14    Viewing the foregoing evidence in the light most favorable to the People, we conclude that it is sufficient to support the court's finding by clear and convincing evidence that Hickey is incompetent to effectively participate in his treatment decisions. *See Ramsey*, ¶ 23. Thus, we will not disturb the court's decision.

## B.    The Fourth *Medina* Element

¶ 15    In assessing the sufficiency of evidence for the fourth *Medina* element, a court must determine (1) "whether the patient's refusal is bona fide and legitimate" and, if so, (2) "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Medina*, 705 P.2d at 974.

¶ 16    Dr. Pillai testified that Hickey's reported symptoms of anxiety and depression could be caused by either the medication or his underlying illness. The district court found that Hickey's interest in avoiding those symptoms could be bona fide and legitimate reasons for refusing Zyprexa and Depakote. Assuming so, the court proceeded to make findings on the second part of the fourth *Medina*

element.  Noting the "severe nature and gravity of his illness" and the danger Hickey posed to himself and others, the court found that his prognosis without treatment is so unfavorable that his interest in refusing Zyprexa and Depakote must yield to the People's interests in preserving his life and health and in protecting the safety of those in CMHHIP.  Hickey argues only that (1) his interest in avoiding anxiety and depression is bona fide and legitimate — which we do not address because the court assumed it to be true; and (2) the court erred in finding that the People's evidence was clear and convincing.  We perceive no error.

¶ 17    Dr. Pillai testified that without proper medication, Hickey was aggressive, agitated, impulsive, paranoid, and delusional; whereas when he took Zyprexa and Depakote, he returned to his baseline. As discussed in Part I, Hickey engaged in several incidents of aggression and self-harm when he was not properly medicated with only Zyprexa and Depakote.  As to Hickey's interest in avoiding side effects, Dr. Pillai opined that Hickey had historically tolerated those medications well, with minimal side effects.

¶ 18    Because the record supports the court's finding that Hickey's prognosis without treatment is so unfavorable that his interest in

avoiding potential side effects must yield to the legitimate interests of the People, we will not disturb it. *See Ramsey*, ¶ 23. And to the extent Hickey's conclusory argument asks us to reweigh the evidence, we decline to do so. *See R.C.*, ¶ 7.

## IV. Disposition

¶ 19 The order is affirmed.

JUDGE FOX and JUDGE BROWN concur.