25CA1938 Peo in Interest of Trujillo 12-31-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1938
Arapahoe County District Court No. 25MH452
Honorable H. Clay Hurst, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Deanna Marie Trujillo,

Respondent-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE SCHUTZ
J. Jones and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 31, 2025

---

Ron Carl, County Attorney, Meghan Rubincam, Senior Assistant County
Attorney, Arapahoe, Colorado for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1 Deanna Marie Trujillo appeals the district court's order (1) certifying her for short-term mental health treatment and (2) authorizing the administration of medications to her without her consent. She contends that the evidence was insufficient to sustain either portion of the order. We disagree and therefore affirm.

## I. Background

¶ 2 Trujillo was admitted to the Colorado Mental Health Hospital in Pueblo (the hospital) in April 2024 after being found incompetent to proceed in a criminal case. Her symptoms included being manic, psychotic, and delusional, and hearing the voices of, and talking to, people who were not there.

¶ 3 In July 2025, Trujillo was found to be permanently incompetent to proceed and her criminal case was dismissed. Trujillo's psychiatrist at the hospital then filed a short-term certification to continue her treatment. The psychiatrist also filed an affidavit explaining Trujillo's diagnosis of bipolar disorder and her need for medications.

¶ 4 Soon thereafter, Trujillo and the State filed a stipulation agreeing to the certification (to expire in October 2025) and that

1

Trujillo would take two antipsychotic medications and a mood-stabilizing medication.

¶ 5      In September 2025, after Trujillo had been transferred to the hospital's geriatric unit, Trujillo's psychiatrist in that unit, Dr. Charles Dygert, filed an extended certification for short-term treatment seeking to continue Trujillo's treatment for an additional three months.  Dr. Dygert also filed an affidavit requesting authorization to treat Trujillo with four antipsychotic medications — Fanapt (iloperidone), Latuda (lurasidone), Invega Sustenna (paliperidone palmitate), and Prolixin (fluphenazine) — and to continue her on the mood-stabilizing medication lithium.

¶ 6      This time, Trujillo, through her appointed counsel, requested a hearing.  Dr. Dygert and Trujillo testified at the hearing.

¶ 7      Dr. Dygert, whom the parties stipulated was an expert in psychiatry, testified that Trujillo's specific diagnosis is type I bipolar disorder with psychosis, with type I being a classic bipolar disorder with episodes of "full mania," as well as major depression.  Dr. Dygert opined that Trujillo is gravely disabled due to the disorder.

¶ 8      In terms of the medications, Dr. Dygert testified that Trujillo was taking the maximum dose of Saphris — which had not been

effective for her symptoms — Latuda, and lithium. Dr. Dygert contemplated the following treatment plan:

- Discontinue the use of Saphris and start using Fanapt, which is "a more consistently successful antipsychotic." Depending on the effectiveness of Fanapt, Trujillo would take either only Fanapt or both Fanapt and Latuda.

- If taking both Fanapt and Latuda proved ineffective, he would administer Invega Sustenna, which proved effective for her in the recent past but was stopped because she complained of its side effects.

- The fourth antipsychotic, Prolixin by injection, would be used solely if Trujillo refuses other medications orally.

- Trujillo would continue taking lithium, which is "a very well-established treatment for bipolar, especially type I bipolar disorder," in combination with one or more antipsychotics.

¶ 9    Dr. Dygert testified that Trujillo does not have insight into her mental illness and, although she was taking her medications voluntarily, she stated that she would stop taking them after being discharged from the hospital. Dr. Dygert testified that, without the

medications, Trujillo would experience a significant deterioration of her condition, both in terms of the severity and frequency of her symptoms. Finally, Dr. Dygert testified that when Trujillo is ready to be discharged, it will likely be to a structured facility such as assisted living or a nursing home.

¶ 10 During Trujillo's testimony, when her counsel asked her whether she has a mental illness, she responded, "I believe I have a mental illness to a — to a point. I think that they're extending it out a little farther than . . . what it is." But her counsel then asked her whether she has bipolar, and she responded, "Well, my grandfather when I was younger put me on this computer system, and when I was on the computer system . . . I had visions, and I had . . . visuals that were really cool." Trujillo then testified that she was off the computer system for a number of years, but then she "was able to stream back into the computer. But since then I've had somebody tamper with it, and now it's not the same." She clarified that she wanted the court to deny the extended certification, while noting that she would be willing to take Fanapt, Latuda, and lithium, but did not want to take Invega Sustenna because of its side effects.

¶ 11    Trujillo also expressed dissatisfaction with having gained 100 pounds during her hospital stay but said that occurred because of how much she was eating, which is a "part of life here." Finally, in terms of her plans following discharge, she testified about her three possible options for where to live, and that she will have Medicaid and supplemental security income.

¶ 12    In its oral ruling, the district court specifically credited Dr. Dygert's testimony, while also noting that "some of [Trujillo's] testimony was clear . . . [b]ut some was a little confusing." The court then approved the extended certification for short-term treatment based in part on its finding that Trujillo is gravely disabled due to her type I bipolar disorder with psychosis. *See* § 27-65-109(1)(a), C.R.S. 2025. And, after analyzing the four-element test from *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), the court denied the State's request to treat Trujillo involuntarily with Invega Sustenna but granted its request to treat her involuntarily with Fanapt, Latuda, Prolixin, and lithium.

## II.    Standards of Review

¶ 13    On a challenge to the sufficiency of the evidence, we review the record de novo to determine whether the evidence, viewed as a

5

whole and in the light most favorable to the People, is sufficient to support the district court's order. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23. We review de novo the court's conclusions of law and defer to the court's findings of fact if sufficient evidence in the record supports them. *Id.* The resolution of conflicts in testimony and determinations of witness credibility are solely within the province of the fact finder. *Id.*

### III. Certification for Short-Term Treatment

¶ 14 Trujillo first contends that the district court erred in extending the certification for short-term treatment because the evidence was insufficient to show that she is gravely disabled. We disagree.

¶ 15 As pertinent here, a person may be certified for up to three months of treatment if she is gravely disabled as a result of a mental health disorder. § 27-65-109(1)(a); *Ramsey*, ¶ 25. The statutory scheme defines "gravely disabled" as

> a condition in which a person, as a result of a mental health disorder, is incapable of making informed decisions about or providing for the person's essential needs without significant supervision and assistance from other people. As a result of being incapable of making these informed decisions, a person who is gravely disabled is at risk of substantial bodily harm, dangerous worsening of any concomitant

6

> serious physical illness, significant psychiatric
> deterioration, or mismanagement of the
> person's essential needs that could result in
> substantial bodily harm.

§ 27-65-102(17), C.R.S. 2025. The State has the burden of proving grave disability by clear and convincing evidence, but a psychiatrist's testimony alone may be sufficient to do so. § 27-65-113(1), C.R.S. 2025; *Ramsey*, ¶ 25; *People v. Pflugbeil*, 834 P.2d 843, 846-47 (Colo. App. 1992).

¶ 16    In concluding that Trujillo is gravely disabled, the district court found that she "doesn't believe she has a mental health disorder" and "won't take" her medications after being discharged from the hospital, which shows that she doesn't have the "ability to realize" that the medications are necessary to treat her bipolar disorder. The court also found that "she clearly needs help from others at this time and cannot do it on her own." And the court emphasized that Trujillo was not utilizing other interventions for her physical health, such as a CPAP machine for her obstructive sleep apnea and medicines for her chronic obstructive pulmonary disease and hypothyroidism.

¶ 17    Dr. Dygert's testimony strongly supports the district court's findings. Dr. Dygert stated that Trujillo does not believe she has a mental illness and that she would not continue to take her medications after being released from the hospital. He also stated that Trujillo "continue[s] to display impairments of her thought processes," at times "admit[s] to internal stimuli," and has "delusional ideation."

¶ 18    Dr. Dygert also confirmed that Trujillo was refusing to use interventions for her sleep apnea, chronic obstructive pulmonary disease, and hypothyroidism, "all because of delusional" beliefs about what those interventions would do to her (for example, that "having air in her nose [from the CPAP machine would] extend[] into all of her organs, and would cause problems with her organs"). Dr. Dygert testified that he "[doesn't] believe that [Trujillo] would be successful on an outpatient basis" because "we need to work on stabilizing her condition" before considering discharging her from the hospital.

¶ 19    In arguing that she is not gravely disabled, Trujillo simply highlights her own testimony that she has three possible options for where to live after being discharged, that she can manage her daily

living activities, and that she is committed to take her prescribed medications, follow medical advice, and attend her medical appointments. She also emphasizes that she is currently taking medications voluntarily. However, the district court specifically credited Dr. Dygert's testimony, not Trujillo's, so her arguments that we should credit her testimony over Dr. Dygert's are unavailing. *See Ramsey*, ¶ 23.

¶ 20 Significantly, Dr. Dygert testified, and the district court found, that Trujillo does not believe she has a mental illness and that she would stop taking her medications after being discharged from the hospital. This evidence is sufficient to show that Trujillo is gravely disabled because she "is incapable of making informed decisions about or providing for [her] essential needs without significant supervision and assistance from other people." § 27-65-102(17).

### IV. Involuntary Administration of Medications

¶ 21 A district court may authorize the involuntary administration of medication if the State demonstrates by clear and convincing evidence that

> (1) the patient is incompetent to effectively participate in the treatment decision;

(2) the treatment is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to herself or others at the institution;

(3) a less intrusive treatment alternative is not available; and

(4) the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment.

*Medina*, 705 P.2d at 973. Here, too, a psychiatrist's testimony may on its own be sufficient to satisfy the *Medina* test by clear and convincing evidence. *See People in Interest of R.K.L.*, 2016 COA 84, ¶ 30.

¶ 22 Trujillo does not contest the district court's rulings that the second and third *Medina* elements were met. However, she challenges the sufficiency of the evidence supporting the first *Medina* element — that she is incompetent to effectively participate in the treatment decision — and the fourth *Medina* element — that her need for the medications is sufficiently compelling to override any bona fide and legitimate interest she has in refusing to take them voluntarily.

## A.     First *Medina* Element

¶ 23     Recall that the first *Medina* element requires the State to establish "the patient's incompetency to make treatment decisions." *R.K.L.*, ¶ 32 (quoting *Medina*, 705 P.2d at 973).  To find that the State did so, a district court must be satisfied that "the patient's mental illness has so impaired [her] judgment as to render [her] 'incapable of participating in decisions affecting [her] health.'" *People in Interest of Strodtman*, 293 P.3d 123, 132 (Colo. App. 2011) (quoting *Medina*, 705 P.2d at 973).

¶ 24     The district court found that Trujillo is incompetent to effectively participate in her treatment decisions because, although she was taking medications voluntarily in the hospital, she would stop taking them after being discharged from the hospital.

¶ 25     The record supports the district court's findings.  When Dr. Dygert was asked at the hearing to describe Trujillo's insight into her bipolar disorder, Dr. Dygert answered, "Essentially none.  [She] [d]enies . . . that she has bipolar disorder or any mental illness."  Dr. Dygert then modified that response by testifying, "[T]here may be . . . a *slight* bit of insight" because she admitted to being "a little manic" on only one occasion.  (Emphasis added.)  And when Dr.

11

Dygert was asked whether Trujillo is competent to effectively participate in treatment decisions regarding the medications, Dr. Dygert answered, "Not at this time, no," because "[s]he has indicated that she does not have a mental illness, does not need [medications] in any way, and that she would stop them" after being discharged from the hospital.

¶ 26    In arguing that she is competent to effectively participate in the treatment decision, Trujillo asserts that "Dr. Dygert testified that [she] does have some insight into mental health." That assertion is misleading because, as explained above, Dr. Dygert initially testified that Trujillo does not have insight into her mental illness, and then modified that by saying "there may be . . . a *slight* bit of insight" because she admitted to being "a little manic" on one occasion.

¶ 27    Beyond that, Trujillo again relies only on her own testimony that she has some insight into her mental illness and is willing to take medications. However, the district court specifically discredited Trujillo's testimony that she would voluntarily take her prescribed medications after being discharged from the hospital. Instead, the court credited Dr. Dygert's testimony that she would

12

*not* take her prescribed medications after being discharged. *See Strodtman,* 293 P.3d at 132 (affirming the magistrate's finding that the patient was incompetent to effectively participate in the treatment decision because, among other reasons, she had not "embraced her need for treatment").

### B.    Fourth *Medina* Element

¶ 28    In analyzing the fourth *Medina* element, a district court first must determine "whether the patient's refusal is bona fide and legitimate." *Medina,* 705 P.2d at 974. If it is, the court then determines "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 29    The district court did not specifically address whether Trujillo has a bona fide and legitimate interest in not taking the medications. On appeal, Trujillo focuses on side effects she has experienced. For example, she emphasizes that Invega Sustenna caused her to experience excessive drooling. However, the district

13

court did not authorize the involuntary administration of Invega Sustenna, rendering that a non-issue.

¶ 30 Trujillo also points out that lithium may be contributing to her hypothyroid condition. However, Trujillo has refused to take a thyroid medication to help with that.

¶ 31 Nonetheless, even assuming — without deciding — that Trujillo had a bona fide and legitimate interest in avoiding any side effects that one or more of the medications may have caused, we discern no error in the district court's conclusion that Trujillo's need for the medications is sufficiently compelling to override her concerns about the side effects.

¶ 32 Notably, Trujillo does not contest the district court's finding that the second *Medina* element was met, namely, that the requested medications are necessary to prevent a significant and likely long-term deterioration in her mental health condition. When Dr. Dygert was asked at the hearing what Trujillo's prognosis was without the requested medications, he opined that Trujillo would experience "significant deterioration" and revert back to her condition upon her admission to the hospital. He testified that type I bipolar disorder, if untreated, leads to increased "frequency and

severity" of the condition. And he ultimately opined that the medications are necessary to prevent a likely long-term deterioration of Trujillo's condition.

¶ 33 Given that testimony, which the district court credited, we discern no error in its ultimate finding that the fourth *Medina* element was satisfied.

## V. Disposition

¶ 34 The order is affirmed.

JUDGE J. JONES and JUDGE GROVE concur.