26CA0553 Peo in Interest of AFH 06-11-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 26CA0553
Pueblo County District Court No. 26MH30032
Honorable Gregory J. Styduhar, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of A.F.H.,

Respondent-Appellant.

ORDER AFFIRMED

Division III
Opinion by JUDGE KUHN
Freyre and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 11, 2026

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    A.F.H. appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (CMHHIP) to medicate him against his will. We affirm.

## I.    Background

¶ 2    A.F.H. was admitted to CMHHIP after being found incompetent to proceed on criminal charges. According to the affidavit and testimony of Dr. Hareesh Pillai, the psychiatrist who supervises A.F.H.'s care and treatment, A.F.H. suffers from an unspecified mood disorder that causes disorganized thinking and behavior, agitation, delusions, and paranoia. He has a long history of psychiatric hospitalizations, mental health holds, and incarcerations.

¶ 3    A.F.H. was prescribed Risperdal and Depakote in jail, but he had not been compliant with those prescriptions before his arrival at CMHHIP. About three weeks after A.F.H. arrived at CMHHIP, staff began administering Zyprexa and Depakote on an emergency basis to manage his episodes of aggression, including slamming and breaking a door, yelling and screaming curses, and glaring and posturing toward staff with his fists clenched. After a few days on

those medications, A.F.H. displayed notable improvement in his symptoms.

¶ 4    The People petitioned for a six-month order authorizing the involuntary administration of Zyprexa, Depakote, and Haldol, along with laboratory work and testing to monitor possible side effects. The district court held an evidentiary hearing, where Dr. Pillai clarified that CMHHIP staff would continue scheduled doses of Zyprexa and Depakote, and they would administer Haldol as a backup medication only if A.F.H. refused oral doses of Depakote. Dr. Pillai further testified about each of the four elements required for the involuntary administration of medication under *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985).[1]  As to A.F.H.'s interest in refusal, Dr. Pillai testified that he knew of no bona fide and legitimate reason for A.F.H. to refuse Zyprexa and Depakote —

---

[1] When the State seeks to administer antipsychotic drugs to a mentally ill criminal defendant involuntarily so that he can stand trial, a reviewing court applies the Supreme Court's test in *Sell v. United States*, 539 U.S. 166, 178 (2003).  However, reviewing courts apply state law tests if the State, as here, seeks to administer antipsychotics involuntarily for a different purpose, including a purpose "related to the individual's dangerousness, or . . . the individual's own interests where refusal to take drugs puts his health gravely at risk."  *Id.* at 181-82.

A.F.H.'s symptoms had been increasing in severity when off the medication but had markedly improved since taking Zyprexa and Depakote, and he had reported no significant side effects other than some sedation.

¶ 5 A.F.H. also testified. He explained that he objected to taking the prescribed medications because did not have a mental illness and he preferred to treat his illnesses, including scoliosis, with a vegan diet. He alleged that he suffered from several side effects from Zyprexa or Depakote, including (1) lethargy and slow movement; (2) restlessness; (3) muscle pain and neck symptoms, which he also attributed to scoliosis and soreness from an injection; and (4) issues with throat swelling, speaking, and swallowing, though he emphasized that those symptoms were mild or nonexistent as compared to when he was taking Abilify.

¶ 6 At the conclusion of the hearing, the district court found Dr. Pillai's testimony to be credible and persuasive. It found A.F.H.'s testimony, particularly as to his alleged side effects, not reliable. The court ultimately found that the People had provided clear and convincing evidence for each of the *Medina* elements, and the court

issued an order authorizing CMHHIP staff to administer all the requested medications for a period of six months.

¶ 7     On appeal, A.F.H. challenges the sufficiency of the evidence supporting the court's order.

## II.     Analysis

¶ 8     A.F.H. challenges the sufficiency of the evidence for only the fourth *Medina* element.  He argues that he "has a bona fide and legitimate interest in refusing medication due to both the risk of potential side effects and the adverse effects he is currently experiencing" and "his decision to refuse medication should be understood as a considered response to legitimate health risks rather than noncompliance."  Accordingly, we review whether the evidence in the record is sufficient to support the court's decision on the fourth *Medina* element.[2]

### A.     Applicable Law and Standard of Review

¶ 9     A district court may authorize the involuntary administration of medication to a patient only if the People establish each of the

---

[2] We decline to address A.F.H.'s challenge, made for the first time in his reply brief on appeal, to the medication dosages that the district court approved.  *See In Interest of L.B.*, 2017 COA 5, ¶ 48 ("We do not consider arguments raised for the first time in a reply brief.").

following elements by clear and convincing evidence: (1) the patient is incompetent to participate effectively in the treatment decision; (2) treatment by medication is necessary either to prevent a significant and likely long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient causing serious harm to themself or others in the institution; (3) a less intrusive treatment alternative isn't available; and (4) the patient's need for treatment with medication is sufficiently compelling to override their bona fide and legitimate interest in refusing medication. *Medina*, 705 P.2d at 973; *see People in Interest of Strodtman*, 293 P.3d 123, 131 (Colo. App. 2011). A treatment provider's testimony alone may constitute clear and convincing evidence. *See People v. Pflugbeil*, 834 P.2d 843, 846-47 (Colo. App. 1992).

¶ 10 When, as here, a patient challenges the sufficiency of the evidence, we review the record as a whole and, viewing it in the light most favorable to the People, determine whether the evidence is sufficient to support the court's decision. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23. We review the court's conclusions of law de novo and defer to its findings of fact if supported by evidence in the record. *People v. Marquardt*, 2016 CO 4, ¶ 8. We also defer

5

to the district court's resolution of evidentiary conflicts and its determinations of witness credibility, the weight of the evidence, and the inferences to be drawn from it. *See People in Interest of R.C.*, 2019 COA 99M, ¶ 7.

### B. Sufficient Evidence Supports the District Court's Conclusion on the Fourth *Medina* Element

¶ 11 In assessing the sufficiency of evidence for the fourth *Medina* element, a court must determine (1) "whether the patient's refusal is bona fide and legitimate"; and, if so, (2) "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Medina*, 705 P.2d at 974. Here, the court found that both prongs favored the involuntary administration of medication. We conclude that the record supports the district court's ultimate finding on this element.

¶ 12 For the purposes of our analysis, we assume that A.F.H.'s alleged side effects are a bona fide and legitimate reason for refusing the prescribed medications, noting that A.F.H.'s reports of sedation or lethargy were undisputed. Even so, Dr. Pillai's

6

testimony provided ample evidence to support the district court's finding that A.F.H.'s need for treatment was sufficiently compelling to override his bona fide and legitimate interest in avoiding these effects. *See Pflugbeil,* 834 P.2d at 846-47. Dr. Pillai testified that (1) A.F.H.'s symptoms, especially the aggressive behavior described above, were becoming more severe without medication; (2) his agitation and aggression, refusal to shower, excessive focus on his vegan diet, and paranoid or delusional complaints had significantly improved since beginning medication; and (3) without medication, A.F.H. could pose a serious risk of harm to others in the institution. We need not consider whether A.F.H.'s testimony supports an alternate finding because we defer to the district court's resolution of conflicting evidence. *See R.C.,* ¶ 7.

¶ 13    Because the record supports the court's finding that A.F.H.'s prognosis without medication is so unfavorable that his bona fide and legitimate interest in refusal must yield to the People's legitimate interests in preserving his health and in protecting the safety of those in the CMHHIP, we conclude that the fourth *Medina* element was satisfied. *See Marquardt,* ¶ 8. To the extent A.F.H. asks us — for the first time in his reply brief — to reweigh his

7

interests against those of the State, we decline to do so.  *See R.C.*, ¶ 7; *see also In Interest of L.B.*, 2017 COA 5, ¶ 48 ("We do not consider arguments raised for the first time in a reply brief.").

## III.   Disposition

¶ 14    The order authorizing the involuntary administration of medication is affirmed.

JUDGE FREYRE and JUDGE JOHNSON concur.